ALAN A. LIMBACH (Bar No. 173059)
alan.limbach@dlapiper.com
M. ELIZABETH DAY (Bar No. 177125)
elizabeth.day@dlapiper.com
GREGORY J. LUNDELL (Bar No. 234941)
greg.lundell@dlapiper.com
ERIK R. FUEHRER (Bar No. 252578)
erik.fuehrer@dalpiper.com
DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant
ESSEPLAST USA (NC), INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff and Counter Defendant,<br><br>v.<br><br>ESSEPLAST USA (NC), INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants and Counterclaimant. | CV NO. 07-cv-2277 BTM (CAB)<br><br>**DECLARATION OF ERIK R. FUEHRER IN OPPOSITION TO PLAINTIFF SORENSON'S MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**<br><br>**Date: August 20, 2008**<br>**Time: 11:30 a.m.**<br>**Courtroom 15, Fifth Floor**<br>**Hon. Barry Ted Moskowitz** |

I, Erik R. Fuehrer, hereby declare as follows:

1. I am an attorney with the law firm of DLA Piper US LLP, attorneys of record for Esseplast USA (NC), Inc. ("Esseplast"). I am licensed to practice law in the state of California and admitted to appear before this Court. The matters contained in this Declaration are of my personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2. A true and correct copy of Judge Moskovitz's March 19, 2008, Order granting Esseplast's Motion to Stay is attached as Exhibit A.

3. Jim Doyle, a Senior Vice President with The oneCARE Company ("oneCARE"), which is a parent company to Esseplast, sent an electronic communication to all Esseplast employees regarding this litigation. The message identified the accused product and stated that while the case is pending, no documents related to the lawsuit should be destroyed, including, but not limited to: electronic or printed copies of documents, emails, schematics, drawings, advertisements, and sales records.

4. Flora Tseng, the Country Manager in oneCARE's Hong Kong office, delivered a letter to Esseplast's third party manufacturer, describing the necessity of document preservation in light of this litigation. Ms. Tseng's letter identified this patent infringement case, the UPC number and item code of the accused product, and requested the maintenance of all electronic and printed documents or any other physical evidence associated with the accused product.

5. A true and correct copy of Plaintiff Jens Erik Sorensen ("Sorensen")'s Opposition to Esseplast's Motion to Stay Pending Outcome of Reexamination Proceedings is attached as Exhibit B.

6. A true and correct copy of Esseplast's Reply In Support of its Motion for Stay Pending Outcome of Reexamination Proceedings is attached as Exhibit C.

7. The acquisition of Esseplast by the Evercare Company took place in June of 2006. Esseplast has within its possession documents that confirm the acquisition date, and can provide them to the Court should it wish to review them.

8. A true and correct copy of Sorensen's June 24, 2008 letter to Esseplast, including the transcript for the June 24, 2008, hearing in *Sorensen v. Black & Decker*, Case No. 06cv1572 is attached as Exhibit D.

9. A true and correct copy of Sorensen's December 4, 2007, Complaint for patent infringement against Esseplast, including the United States Patent No. 4,935,184 is attached as Exhibit E.

10. A true and correct copy of Sorensen's June 5, 2008, letter to Esseplast is attached as Exhibit F.

///

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on this 6th day of August, 2008 at East Palo Alto, California.

/s/ Erik R. Fuehrer
Erik R. Fuehrer
DLA PIPER US LLP

**Exhibit – Page Index**



| Exhibit No. | Begins at Page |
|---|---|
| A | 1 |
| B | 4 |
| C | 29 |
| D | 41 |
| E | 79 |
| F | 109 |

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>ESSEPLAST (USA) NC, INC. AND DOES 1-10,<br><br>Defendant. | CASE NO. 07CV2277 BTM (CAB)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING REEXAMINATION PROCEEDINGS |

For the reasons stated in the Court's order granting stay in Sorensen v. Black and Decker, 06cv1572, Docket No. 243 and on the record at the February 25, 2008 status conference in Sorensen v. Helen of Troy, 06cv2278, the Court GRANTS without prejudice Defendant's motion for stay. The Court concludes that a reasonable stay is appropriate in this case because the litigation is in its early stages, Plaintiff has not established undue prejudice, and the reexamination will simplify issues for the Court and save expense for the parties. See, e.g., Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). However, if it appears that the reexamination will not be effected within a reasonable time, Plaintiff may move to vacate the stay. Additionally, any party may apply to the Court for an exception to the stay if it has specific, valid reasons to believe that it needs to obtain discovery in order to preserve evidence that will otherwise be unavailable after the stay.

Defendant is ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision.

IT IS SO ORDERED.

DATED: March 19, 2008

Barry Ted Moskowitz

Honorable Barry Ted Moskowitz
United States District Judge

# EXHIBIT B

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

Attorneys for Plaintiff JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, | Case No. 07-CV-02277-BTM-CAB |
| Plaintiff, | **OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS** |
| v. | |
| ESSEPLAST (USA) NC, INC. and DOES 1-10, | Date: March 14, 2008<br>Time: 11:00 a.m.<br>Courtroom 15 – 5th Floor<br>The Hon. Barry T. Moskowitz |
| Defendants. | *NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT* |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

SUMMARY OF OPPOSITION ..... 1

FACTUAL SUMMARY ..... 2
*Procedural status of this case* ..... 2
*Status of '184 patent reexaminations* ..... 2

ARGUMENT ..... 3

I. STAY MUST BE BASED UPON THE SPECIFIC CIRCUMSTANCES OF EACH CASE. ..... 3

II. DEFENDANT HAS FAILED TO DEMONSTRATE HARDSHIP, AND IS JUDICIALLY ESTOPPED FROM CLAIMING HARDSHIP BY ITS IMPLICIT JUDICIAL ADMISSIONS IN SEEKING DECLARATORY RELIEF.. ..... 5

III. PLAINTIFF WOULD BE UNDULY PREJUDICED AND PLACED AT A TACTICAL DISADVANTAGE IF A COMPLETE STAY ISSUES ..... 7

A. Plaintiff Would Be Prejudiced Through Inability To Identify and Serve All Proper Defendants ..... 7

B. Plaintiff Would Be Prejudiced Through The Loss Of Evidence. ..... 9

C. Plaintiff Would Be Prejudiced and Placed at a Tactical Disadvantage By Being Subjected To An Indefinite Stay Predicated on Multiple Reexamination Requests. ..... 10

D. Plaintiff Would Be Prejudiced By a Complete Stay, Which Would Result in Significant Additional Delay In Conducting A Claim Construction Hearing In The Black & Decker Case. ..... 11

IV. JUDICIAL ECONOMY AND THE INTERESTS OF BOTH PARTIES WOULD BE BEST SERVED BY A PARTIAL STAY OF THIS CASE. ..... 12

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

*ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378 (N.D.Cal. 1994) .......... 3

*Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F.Supp.2d 1228 (M.D.Ala. 2000) .......... 8

*IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030 (C.D. Cal. 2005) .......... 5

*In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F.Supp.2d 1022 (N.D.Cal. 2005) .......... 9

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) .......... 5

*Jain v. Trimas Corp.*, 2005 WL 2397041 (E.D.Cal. Sept. 27, 2005) .......... 3

*KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661 (N.D.Cal. Mar. 16, 2006) .......... 3

*Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069 (N.D.Cal. Dec. 14, 2006) .......... 3

*Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107 (N.D.Cal. 2006) .......... 9

*Unidisco v. Schattner*, 210 U.S.P.Q. 622 (D.Md.1981) .......... 5

*Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001) .......... 3

## SUMMARY OF OPPOSITION

Defendant's Motion for Stay (Docket # 14) should be DENIED because of the substantial likelihood that the non-moving Plaintiff would suffer prejudice as a result of a complete stay, and the moving party would not be harmed if the stay request is denied. A better solution for all involved is a partial stay that is fully sufficient to ameliorate the prejudice to Plaintiff, protect the Defendant, and result in the maximum judicial efficiency.

The 22 pending '184 patent infringement cases now pending before this Court are not identical in terms of scope of dispute between the parties, and each should be carefully evaluated and a tailored partial stay order issued to balance the interests of the parties in each case.

Defendant's motion is nothing more than a copycat of motions for stay previously filed in the related cases of Sorensen v. Black & Decker Corporation, et al, Case No. 06-cv-1572, Sorensen v. Defendant International, et al, Case No. 07-cv-02121, and Sorensen v. Helen of Troy, et al, Case No. 07-cv-02278. Defendant's argument amounts to asserting that all litigation over a presumptively valid patent should stop in its tracks because other unrelated infringers have belatedly requested the USPTO to reexamine SOME claims of the patent. Such a one-size-fits-all approach would result in substantial prejudice to Plaintiff in terms of lost ability to identify and name all responsible defendants, lost evidence, and unnecessary delay in all of the related infringement cases.

The required balancing of the parties' interests weighs in favor of only a partial stay of proceedings. The partial stay should allow initial discovery and motion practice to continue. This case could then advance to procedural parity with the Black & Decker case for a joint claim construction hearing of the '184 cases in a reasonable period of time after the patent reexamination is completed.

Because of the likelihood of prejudice to Plaintiff is high, Defendant would have to make out a clear case of hardship to receive a stay. Defendant has not done

so. Further, Defendant is estopped from arguing that it will be prejudiced because its Counterclaim for declaratory relief implicitly asks the Court for prompt adjudication of the claim. Defendant is bound by its pleadings.

## FACTUAL SUMMARY

*Procedural Status of This Case.* On December 4, 2007, Plaintiff Sorensen Research and Development Trust ("SRDT") filed this action for patent infringement against Defendant Esseplast (USA) NC, Inc. ("Defendant"). On January 28, 2008, Defendant filed the pending Motion for Stay, as well as an answer and a counterclaim seeking affirmative relief against SRDT.

*Status of '184 Patent Reexaminations.* As the Court is aware, a related '184 patent case, Sorensen v. Black & Decker Corporation, et al, Case No. 06cv1572, has been stayed pending a third-party patent reexamination requested in July 2007 by Black & Decker ("1st reexamination"). The 1st reexamination is already in its seventh month and the first office action has not yet issued. *Kaler Decl.* ¶ 4.

Plaintiff declined to file an optional patent owner's statement in response to the reexamination request in order to shorten the reexamination process. Black & Decker was thereby barred from a second filing with the USPTO regarding the 1st reexamination. *Kaler Decl.* ¶ 5.

Shortly thereafter, and a full six months after the 1st reexamination request had been filed, co-defendants to Black & Decker -- Phillips Plastics and Hi-Tech Plastics -- filed their own third-party reexamination request ("2nd reexamination") with the USPTO, citing some of the same prior art listed in the 1st reexamination request. *Kaler Decl.* ¶ 6. Although the USPTO has not yet issued any response to the 2nd reexamination request, which is not due until about March 23, 2008, it is likely that this 2nd reexamination request will complicate and further lengthen the time from the 1st reexamination filing to completion of the reexamination. *Kaler Decl.* ¶¶ 6-7.

Based on more recent research, the likely time period for conclusion of a reexamination is approximately five years, extending to nearly eight years if an appeal to the Federal Circuit is sought. *Kaler Decl.* ¶ 8. This time period, recently reported in SDIPLA, is substantially more than the time period of approximately two years reported by the USPTO and argued to the Court by Black & Decker and others.

## ARGUMENT

### I. STAYS MUST BE BASED UPON THE SPECIFIC CIRCUMSTANCES OF EACH CASE.

The court is not required to stay judicial resolution of a patent case in view of reexaminations, rather the decision to stay is within the discretion of the Court. *Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

A court must weigh the parties competing interests as presented by the specific facts of the case at bar. *Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005).

When determining the appropriateness of a stay pending a patent reexamination, courts consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at *2 (N.D.Cal. Dec. 14, 2006) (quoting *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D.Cal. 1994)); *see also Jain*, 2005 WL 2397041, at *1; *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D.Cal. Mar. 16, 2006).

When this Court entered the stay in the related Black & Decker case, the order was based upon an evaluation of all the factors in that case and reached a decision on those SPECIFIC facts.

Case 3:07-cv-02277-BTM-RBB Document 22 Filed 02/21/2008 Page 7 of 19

The specific critical facts in this case are substantially different than those in Black & Decker. In Black & Decker, the stay request was made just months before a claim construction hearing and a scheduled bifurcated trial. Additional parties had been added as defendants. The Court and the parties were well aware of the issues for trial, and many of those issues had been briefed at length. Substantial discovery had been conducted. Claim construction was the next logical step in the case, and it was imminent.

This case is substantially different. Plaintiff first became aware of potential infringement by Defendant barely two years ago. Plaintiff has not yet been able to identify all potentially liable defendants, and has conducted no discovery. Defendant asserted in its motion that: "a court likely will waste time and resources construing and trying patent claims that may be eliminated or amended during reexamination." Relying on *Target Therapeutics, Inc. v. SciMed Life Sys.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995). By this statement, Defendant made it clear that CLAIM CONSTRUCTION is the aspect of litigation that should not occur pending reexamination. Plaintiff agrees. The Black & Decker case was stayed with claim construction the next procedural step. By contrast, in the present case, there is a host of discovery and other preliminary matters that must occur before claim construction becomes an issue. Allowing that discovery to go forward will preserve evidence and protect the rights of the parties while the USPTO proceeds with the reexamination in parallel.

A partial stay is most appropriate in this case. Issuance of a complete stay before the parties have conducted any discovery would be a mistake.

## II. DEFENDANT HAS FAILED TO DEMONSTRATE HARDSHIP, AND IS JUDICIALLY ESTOPPED FROM CLAIMING HARDSHIP BY ITS IMPLICIT JUDICIAL ADMISSIONS IN SEEKING DECLARATORY RELIEF.

In *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1032 (C.D. Cal. 2005), the court denied a stay in part because both parties claimed in their motions for preliminary injunction that they would be irreparably damaged absent immediate action from the court. Although the court denied both preliminary injunction motions, it accepted both parties' representations that they will be prejudiced by further delays. "A swift resolution of the issues, according to both parties, is in the best interest of all involved."

"The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (quoting *Unidisco v. Schattner*, 210 U.S.P.Q. 622, 629 (D.Md.1981) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

Defendant and its attorneys have asserted in Rule 11-governed pleadings a counterclaim under the Declaratory Judgment at 28 USC §§ 2201 *et seq.* "[T]he purpose of the Declaratory Judgment Act in patent cases is to provide the allegedly infringing party <u>relief from</u> uncertainty and <u>delay</u> regarding its legal rights." *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.* 497 F.3d 1271 (Fed.Cir. 2007) quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed.Cir.1987) (emphasis added).

Further, the *Sony* Court noted that the U.S. Supreme Court had stated in its decision in *MedImmune, Inc. v. Genentech, Inc.*, --- U.S. ----, 127 S.Ct. 764, 771 166 L.Ed.2d 604 (2007) that the test of a declaratory judgment claim for relief is whether "there is a substantial controversy, between parties having adverse legal interests, of <u>sufficient immediacy</u> and reality to warrant the issuance of a declaratory judgment."

*quoting Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-1, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (emphasis added).

The allegations in Defendant's counterclaim at paragraphs 5, 11, and 14 rely upon the Declaratory Judgment Act, and thus are judicial admissions that Defendant claims that its legal rights are of "sufficient immediacy" that it needs "relief from . . . delay regarding its legal rights."

Parties "are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit." *Hughes v. Vanderbilt University* 215 F.3d 543, 549 (6th Cir., 2000) *citing Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986).

The Court in *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th, Cir. 1988) stated: "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on party who made them." The *American Title* Court further observed that: "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Engineering Corp.,* 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *See White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983); *Fordson,* 25 B.R. at 509.

Further, the Court in *Soo Line R. Co. v. St. Louis Southwestern Ry.,* 125 F.3d 481, 483 (7th Cir. 1997) concluded: "although the rule smacks of legalism, judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."

Defendant's formal admissions that it is entitled to "relief from delay" cannot be overcome by Defendant simply by filing a motion and declaration asserting the opposite position. Rather, Defendant is held to its judicial admission that it needs

relief from delay regarding its legal rights – i.e., Defendant needs no stay – and is estopped from arguing for a stay of the present litigation.

Because Defendant has not demonstrated that it would suffer any harm, and is barred by its judicial admissions from doing so, Defendant's request for stay must be denied.

## III. PLAINTIFF WOULD BE UNDULY PREJUDICED AND PLACED AT A TACTICAL DISADVANTAGE IF A COMPLETE STAY ISSUES.

Plaintiff would be unduly prejudiced and subjected to a clear tactical disadvantage by a complete stay for the following reasons: (A) inability to identify and serve all defendants; (B) loss of evidence during the stay; (C) being subjected to an indefinite stay as a result of multiple, staggered reexamination requests by other accused infringers; and (D) a corresponding delay in the Black & Decker case when the stay in that case is lifted arising from the need to coordinate claim construction across cases.

The inability to timely identify and make contact with all potential defendants magnifies the problem of loss of evidence in that all relevant parties may not even know that there is any need to preserve evidence.

This prejudice, and any prejudice asserted by the moving party, can be ameliorated through a partial stay and scheduling order that only stays claim construction specific discovery, briefing and hearing, until after the reexamination(s) have been concluded (see Section IV, below).

### A. Plaintiff Would Be Prejudiced Through Inability To Identify and Serve All Proper Defendants.

Federal Rules of Civil Procedure, Rule 15(c), places limitations on a party's ability to amend pleadings to add or substitute parties, and places restrictions on when such amendments relate back to the date of the initial filings.

> (c) Relation Back of Amendments.
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> > ...
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [120 days from original filing], the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. Rule 15(c).

The substitution of a named party for a fictitious party named in a prior complaint is considered a change of parties, not a change of name of the original party, for purposes of applying relation back doctrine. *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F.Supp.2d 1228 (M.D.Ala. 2000).

In this case, Plaintiff has named one defendant, and identified 10 DOES as responsible parties to the manufacture, import, sale and/or offer for sale of the accused products. It is quite likely that additional parties are involved in these actions, but Plaintiff cannot identify or name them until some preliminary discovery is done, including initial disclosures.

If Plaintiff is precluded from conducting discovery that would allow it to identify all potential defendants, add them to the case, and serve them with the Complaint, Plaintiff could later be precluded from adding them to the case. This would result in prejudice to Plaintiff and provides further grounds for denial of this motion for stay.

Potential defendants that are not made aware of this suit may also be in a position to claim that they would be prejudiced by late notice of and addition to the

suit because they did not have the opportunity to preserve their own evidence.

A complete stay of litigation before any preliminary steps are taken to identify proper parties and ensure initial discovery or preservation of evidence greatly prejudices the Plaintiff and may well prejudice the entire judicial process in this case.

B. Plaintiff Would Be Prejudiced Through The Loss Of Evidence.

Plaintiff will likely suffer substantial prejudice if a complete stay is granted in this case because the intervening delay will result in the loss of crucial, relevant evidence. Motions to stay pending patent reexamination have been denied where the likely length of reexamination[1] (a period reasonably estimated to be at least five years and close to eight years if an appeal is filed) will serve to exacerbate the risk of lost evidence. In *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006), the court noted:

> [Defendant's] failure to preserve individual records suggests that further delay could lead to further loss of information. Although the likely length of reexamination is not, in itself, evidence of undue prejudice, in the circumstances of this case, a possible lengthy delay would put [plaintiff] at a clear tactical disadvantage. The Court finds that this favor weighs strongly against a stay.

*Id.*

A delay that could reasonably extend to more than seven years would make it extraordinarily difficult to locate information regarding the process used to

---

[1] In the past, it was reported that reexaminations generally take from six months to three years. *Telemac*, 405 F. Supp.2d at 1110 (citing *In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F.Supp.2d 1022, 1023 (N.D.Cal. 2005). These numbers appear to be based on outdated information. The San Diego Intellectual Property Lawyers Association ("SDIPLA") newsletter, SDIPLA News, Vol. 11, Issue 10, Feb. 2008, reports that when one looks only at recent years, **"the average ex parte reexamination now takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years."**

manufacture the accused products, as well as damages and willfulness. No initial disclosures have been exchanged. It is unknown to Plaintiff and the Court whether all parties in possession of discoverable evidence have knowledge of this suit or have any legal obligations to preserve evidence.

If the case is completely stayed without even this initial information, Plaintiff cannot confirm location of manufacture of the accused products or the identity of knowledgeable witnesses and other evidence and there is no way to guarantee that relevant, discoverable evidence would not be lost in the next five years. Plaintiff is unaware of whether relevant documents and witnesses are within the control of the named Defendant or non-parties.

Because of the very real possibility of loss of evidence during a complete stay, the Court should deny a complete stay, and instead issue a partial stay that would delay claim construction matters, but ensure preservation of manufacturing process, sales, and willfulness evidence.

C. <u>Plaintiff Would Be Prejudiced and Placed at a Tactical Disadvantage By Being Subjected To An Indefinite Stay Predicated on Multiple Reexamination Requests.</u>

Defendant seeks an unfair tactical advantage over Plaintiff through use of the serendipitous event of patent reexamination proceedings filed by unrelated accused patent infringers in a wholly different lawsuit. In considering this motion, the Court should review the current status of those reexamination proceedings.

The 1st reexamination request by Black & Decker was filed seven months ago, and the first office action has not yet issued in that matter. A 2nd reexamination request was filed by Black & Decker's suppliers, Phillips Plastics and Hi-Tech Plastics, in December 2007. No response to that request is expected from the USPTO until mid- to late March.

It is certainly understandable that the accused infringers in the Black & Decker suit would want to use every weapon in their arsenal to try to avoid liability. The

sheer magnitude of potential damages entices defendants to take every colorable action to delay obtaining a judgment. However, the existence of defensive reexamination requests filed with the USPTO by Defendants in a huge lawsuit should not *de facto* govern how a much smaller suit should proceed.

D. <u>Plaintiff Would Be Further Prejudiced By a Complete Stay Which Would Introduce Additional Delay Into The Black & Decker Case.</u>

In June 2007, the Court stated its intention to conduct a consolidated claim construction hearing on all of the '184 patent cases. Docket # 147, page 4, in the Black & Decker case.

The Black & Decker stay issued after a year of intense litigation and discovery, only shortly before a scheduled claim construction hearing. In its Order staying the Black & Decker case, this Court stated that discovery was not nearing completion. However, it was just months prior to a scheduled and agreed claim construction hearing. Upon completion of reexamination, the Black & Decker case would be ready for rescheduling of a claim construction hearing within 90 days of termination of the stay. Assuming that the Court proceeds with the planned consolidated claim construction with other '184 patent cases that have not completed a year of discovery, it would take many months before the other cases would be procedurally ready for claim construction. Thus, the delays would compound each other, making a complete stay of this case a substantial further extension of the already lengthy delay in the Black & Decker case.

It is the best use of judicial resources that this Court conduct a single claim construction hearing on all pending '184 patent cases. For the Court to accomplish that goal, the more recently filed cases would need to be advanced to procedural parity with the Black & Decker case, a task that can be best accomplished by denying the pending motion and allowing discovery and motion practice prior to claim construction to proceed.

Because Plaintiff has demonstrated the substantial likelihood of prejudice if a complete stay is issued, Defendant's motion should be denied.

IV. JUDICIAL ECONOMY AND THE INTERESTS OF BOTH PARTIES WOULD BE BEST SERVED BY A PARTIAL STAY OF THIS CASE.

As demonstrated above, Plaintiff would be greatly prejudiced by a complete stay, and Defendants would not be significantly harmed if a complete stay were denied. A balancing of the respective interests weighs in favor of a partial stay.

Plaintiff is not proposing that this case progress all the way to the eve of trial, or claim construction, during the pendency of the existing reexamination. Rather, Plaintiff agrees that claim construction-specific discovery, briefing and hearing can wait until the lift of stay in the Black & Decker case. Defendants will not suffer any prejudice by attending an ENE, preparing a discovery plan, or responding to limited discovery requests aimed at identifying the proper defendants and the preservation of evidence.

Some examples of critical discovery that do not require completion of the reexamination include: (1) identification of all entities involved in the manufacture, import, marketing and sale of the accused products; (2) information on the manufacturing processes used; (3) production and sales numbers; and (4) the identities and locations of knowledgeable witnesses, documents and physical evidence.

Because judicial interests and the interests of both parties would be best served by only a partial stay, the Motion for Stay should be denied.

## CONCLUSION

The moving parties' motion for a complete stay of litigation must be denied in its current form, because the non-moving Plaintiff will suffer great prejudice if it is granted, and the moving parties will not be harmed if it is denied.

Case 3:07-cv-02277-BTM-RBB Document 22 Filed 02/21/2008 Page 16 of 19

The inability to timely identify and make contact with all potential defendants and holders of relevant evidence would result in irreparable loss of evidence in this case. If all relevant parties do not even know that there is any need to preserve evidence, there is no reason to believe that necessary evidence will be maintained.

Because of the very real possibility of loss of evidence during a complete stay, the Court should deny a complete stay, and instead issue a partial stay that would delay claim construction matters, but ensure preservation of manufacturing process, sales, and willfulness evidence.

Judicial economy is best served by allowing initial discovery to identify all proper defendants and allowing this case to procedurally catch-up to the Black & Decker case to allow for a consolidated claim construction hearing.

Therefore, Plaintiff respectfully requests that the Court deny the Motion for Stay as framed, and provide the alternate remedy of a partial stay which allows the parties to conduct limited discovery to avoid the loss of evidence during the reexamination. The Court can then schedule claim construction briefing and trial immediately following lift of the stay. Specifically, Plaintiff requests the Court to issue an order as follows:

1. Require the parties to engage in a Rule 26 discovery conference to outline the scope of discovery anticipated by all parties and propose a discovery schedule to cover aspects of the case that do not directly bear on the scope of invalidity being considered by the USPTO in reexamination or on explicit claim construction;

2. Require the parties to exchange initial disclosures pursuant to Rule 26;

3. Allow both parties to conduct depositions, inspections and written discovery requests to preserve evidence for the purposes of later trial as follows: the identity and location of manufacturers of the Accused Products, the volume of sales of the Accused Products identified in the Complaint; and the manufacturing processes used to produce the Accused Products.

RESPECTFULLY SUBMITTED this Thursday, February 21, 2008.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT
TRUST, Plaintiff

/s/ J. Michael Kaler

Melody A. Kramer, Esq.
J. Michael Kaler, Esq.
Attorneys for Plaintiff

## PROOF OF SERVICE

I, J. Michael Kaler, declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is the Kaler Law Office, Inc., 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121.

On Thursday, February 21, 2008, I served the following documents:

**OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Alan A. Limbach<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>alan.limbach@dlapiper.com | Esseplast (USA) NC, Inc. | Email--Pleadings Filed with the Court via CM/ECF |
| Gregory J. Lundell<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>greg.lundell@dlapiper.com | Esseplast (USA) NC, Inc | Email--Pleadings Filed with the Court via CM/ECF |
| Elizabeth Day<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>elizabeth.day@dlapiper.com | Esseplast (USA) NC, Inc | Email--Pleadings Filed with the Court via CM/ECF |
| Vincent S Lam<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>vincent.lam@dlapiper.com | Esseplast (USA) NC, Inc | Email--Pleadings Filed with the Court via CM/ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully

prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

I declare that the foregoing is true and correct, and that this declaration was executed on Thursday, February 21, 2008, in San Diego, California.

/s./ J. Michael Kaler

J. Michael Kaler

Case 3:07-cv-02277-BTM-RBB Document 22-2 Filed 02/21/2008 Page 1 of 5

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

Attorneys for Plaintiff JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ESSEPLAST (USA) NC, INC. and DOES 1-10,<br><br>Defendants. | Case No. 07-CV-02277-BTM-CAB<br><br>**DECLARATION OF J. MICHAEL KALER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**<br><br>Date: March 14, 2008<br>Time: 11:00 a.m.<br>Courtroom 15 – 5th Floor<br>The Hon. Barry T. Moskowitz<br><br>*NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT* |

I, J. Michael Kaler, declare:

1. I am not a party to the present action. I am over the age of eighteen. I have personal knowledge of the facts contained within the following paragraphs, and could and would competently testify thereto if called as a witness in a court of law.

2. At all times relevant herein I have been an attorney for Sorensen Research and Development Trust ("SRDT"), Plaintiff in the above-captioned matter.

3. This Declaration is being submitted in conjunction with Plaintiff's Opposition to Defendant's Motion for Stay Pending Outcome of Reexamination Proceedings.

4. A related '184 patent case, Sorensen v. Black & Decker Corporation, et al, Case No. 06cv1572, has been stayed pending a third-party patent reexamination requested filed in July 2007 by Black & Decker ("1st reexamination"). The 1st reexamination is already in its seventh month and the first office action has not yet issued.

5. Plaintiff declined to file an optional patent owner's statement in response to the reexamination request in order to shorten the reexamination process. Black & Decker was thereby barred from a second filing with the USPTO regarding the 1st reexamination.

6. A full six months after the 1st reexamination request had been filed, Black & Decker's co-defendants Phillips Plastics and Hi-Tech Plastics filed their own third-party reexamination request ("2nd reexamination") with the USPTO, citing some of same prior art listed in the 1st reexamination request.

7. Although the USPTO has not yet issued any response to the 2nd reexamination request, which is not due until about March 23, 2008, it is likely that this 2nd reexamination request will complicate and lengthen the time from the 1st reexamination filing to completion of the reexamination.

8. Based on more recent research, the likely time period for conclusion of a reexamination is five years, extending to nearly eight years if an appeal to the

Federal Circuit is sought. The San Diego Intellectual Property Lawyers Association ("SDIPLA") newsletter, SDIPLA News, Vol. 11, Issue 10, Feb. 2008, reports that when one looks only at recent years, "the average ex parte reexamination now takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years."

RESPECTFULLY SUBMITTED this Thursday, February 21, 2008.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT
TRUST, Plaintiff

/s/ J. Michael Kaler

J. Michael Kaler, Esq.
Attorney for Plaintiff

# PROOF OF SERVICE

I, J. Michael Kaler, declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is Kaler Law Office, 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121.

On Thursday, February 21, 2008, I served the following documents:

**DECLARATION OF J. MICHAEL KALER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Alan A. Limbach<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>alan.limbach@dlapiper.com | Esseplast (USA) NC, Inc. | Email--Pleadings Filed with the Court via CM/ECF |
| Gregory J. Lundell<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>greg.lundell@dlapiper.com | Esseplast (USA) NC, Inc | Email--Pleadings Filed with the Court via CM/ECF |
| Elizabeth Day<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>elizabeth.day@dlapiper.com | Esseplast (USA) NC, Inc | Email--Pleadings Filed with the Court via CM/ECF |
| Vincent S Lam<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>vincent.lam@dlapiper.com | Esseplast (USA) NC, Inc | Email--Pleadings Filed with the Court via CM/ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐

(Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

I declare that the foregoing is true and correct, and that this declaration was executed on Thursday, February 21, 2008, in San Diego, California.

/s./ J. Michael Kaler

J. Michael Kaler

# EXHIBIT C

ALAN A. LIMBACH (Bar No. 173059)
alan.limbach@dlapiper.com
ELIZABETH DAY (Bar No. 177125)
elizabeth.day@dlapiper.com
GREGORY J. LUNDELL (Bar No. 234941)
greg.lundell@dlapiper.com
DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant
ESSEPLAST USA (NC), INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff and Counter Defendant,<br><br>v.<br><br>ESSEPLAST USA (NC), INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants and Counterclaimant. | CV NO. 07-cv-2277 BTM (RBB)<br><br>**DEFENDANT ESSEPLAST'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE LITIGATION PENDING REEXAMINATION OF U.S. PATENT NO. 4,935,184**<br><br>**Date: March 14, 2008**<br>**Time: 11 a.m.**<br>**Courtroom 15, Fifth Floor**<br>**Hon. Barry Ted Moskowitz**<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

On January 28, 2008, Defendant Esseplast USA (NC), Inc. ("Esseplast") moved to stay this case pending the United States Patent and Trademark Office's ("PTO") reexamination of the sole patent asserted in this case, United States Patent No. 4,935,184 ("the '184 patent"). On February 21, 2008, Plaintiff Jens Erik Sorensen ("Sorensen") filed an Opposition to Esseplast's Motion to Stay. Esseplast replies accordingly.

## I. INTRODUCTION

Sorensen's Opposition to a complete stay in this action asks the Court to take an unfounded gamble with the Court's and the parties' time and resources. The '184 patent is

currently the subject of two reexamination proceedings before the PTO.[1] Any substantial change to the only independent claim in '184 patent will alter the scope of the entire patent, and alter every aspect of this litigation, and effectively end Sorensen's damages claim against Esseplast. Sorensen does not deny that a change to the patent during reexamination is likely. Anything less than a complete stay will expose the Court and the parties to a significant risk of participating in meaningless litigation where there is no possibility of an injunction and no damages at stake – a clear hardship.

Moreover, nothing in Sorensen's Opposition supports a conclusion that this case is substantially different from the other cases that have already been stayed such that a partial stay in this instance somehow would be justified. The same patent is subject to the same reexamination proceedings, and understanding the scope of the patent is crucial to all phases of this and the other twenty-two pending cases. If anything, the fact that this case is only in its earliest stages supports a stay before further resources are expended.

Sorensen's claims to prejudice are of his own doing because he waited for two years before filing this lawsuit and, in any case, do not represent cognizable claims of prejudice that would preclude the Court from entering a stay. First, Sorensen's inability to identify potential defendants is irrelevant. Pleading fictitious parties is improper under the Federal Rules of Civil Procedure. Therefore, it cannot serve as a basis for defeating Esseplast's request for a stay. Second, Sorensen's claims that a stay "will result in the loss of crucial, relevant evidence" is simply false. Esseplast has already taken steps to ensure preservation of relevant information in its possession, custody and control. Third, the possibility of being subjected to multiple reexaminations has nothing to do with the appropriateness of a stay in this case. Finally, the fact that this case is not at the same point in litigation as the *Black and Decker* case makes it more appropriate to stay this case rather than less.

---

[1] On February 21, 2008, shortly after Esseplast filed its Motion for a Stay of Litigation, the PTO granted the second request for reexamination of the '184 patent, finding 9 different substantial new questions of patentability based on 10 different prior art references. *See* the Declaration of Gregory J. Lundell in Support of Esseplast's Reply, ¶ 4, Exh. A. This is in addition to the 13 substantial new questions of patentability based on 8 prior art references that the USPTO found in the first reexamination proceeding. Only two prior art references are common to both reexamination proceedings.

## II. ARGUMENT

### A. Sorensen's Own Articulation of the Circumstances in This Case Supports a Complete Stay.

Sorensen's attempts to distinguish this case from the other cases where a stay has already been entered are unavailing. Indeed, this case has one all-important similarity to the other cases that are already stayed: the '184 patent. The fact that the scope of the '184 patent is presently at issue before the PTO provides this Court with more than adequate grounds to stay the instant case pending the outcome of the PTO's reexaminations.

Sorensen's distinctions between this case and the *Black and Decker* case actually support Esseplast's Motion for a Stay. Sorensen points out that the Court stayed the *Black and Decker* case "just months before a claim construction," after "[s]ubstantial discovery had been conducted," and after the "Court and the parties were well aware of the issues for trial." Doc. No. 22, Sorensen's Response in Opposition at p. 4 ("Opposition"). Sorensen contrasts that timing with this case where the parties have "conducted no discovery." Indeed, it is the fact that this case is still in its earliest stage that supports the issuance of a stay. *See, e.g., Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 WL 627920, *2 (N.D. Cal, Feb. 26, 2007)("This being the early stage of litigation weighs in favor of granting a stay."); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q. 2d 2022, 2023, 1995 WL 20470 (N.D. Cal. 1995) (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay where the parties had undertaken little or no discovery).

Sorensen's Opposition also admits that the circumstances of this case are of his own doing. Sorensen has apparently been aware of Esseplast's activities for two years. Opposition at p. 4. Rather than promptly file his complaint, Sorensen waited until two weeks before the '184 patent would expire and after the PTO found that the '184 patent has substantial questions of

patentability. Thus, Sorensen should not now be surprised that a stay in this case would be proper given the expiration of the '184 patent and the stays that are already in place.

**B. Allowing This Case to Proceed in Light of the Uncertainty Surrounding the '184 Patent Amounts to Undue Hardship.**

**1. Litigating a Patent With No Possibility of an Injunction and Likely No Damages Amounts to a Hardship.**

Contrary to Sorensen's allegations, Esseplast's Motion to Stay identifies several hardships justifying a stay. Doc. No. 14, Esseplast's Motion to Stay at p. 5. Sorensen does not compete with Esseplast (let alone produce a product covered by the '184 patent), the '184 patent has expired, so an injunction is out of the question. Any change in the only independent claim in '184 patent as a result of the pending reexaminations will trigger the doctrine of intervening rights and postpone the accrual of any damages claims until after the patent emerges from the reexaminations (assuming it reemerges). Thus, if the PTO alters the '184 patent's independent claim, then this case will have been about nothing.

Here, the '184 patent is undergoing reexamination in two different proceedings for no less than 22 different new substantial questions of patentability in light of 16 different prior art references. It is very unlikely that the '184 patent will emerge without substantially amended claims. Where the reexamined claims are not substantially identical to the original claims, those who may have infringed the original claims are relieved from liability during the period before the claims were reexamined under the defense of intervening rights. *Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997). Thus, under the doctrine of intervening rights, if the sole independent claim of the '184 patent is amended during either reexamination, any damages will accrue only from the time the '184 patent emerges from reexamination. However, given that the '184 patent expired on February 5, 2008, even if the '184 patent survives reexamination and reemerges with amended claims, Sorensen will not be entitled to any damages from Esseplast. *See* 35 U.S.C. § 154(c)(1); *see also Bloom*, 129 F.3d at 1249.

Requiring this case to go forward at this time subjects this case to the very real possibility that any litigation will be meaningless. Moreover, it is likely that the reexamination proceedings will result in a simplification of issues, reduction of cost to the parties, and the Court will benefit

from the PTO's review of the '184 patent. Denying Esseplast's request for a stay in this scenario amounts to a prospect of unjust hardship that can be avoided with no prejudice to Sorensen.

**2. Esseplast Identified This Hardship in Its Motion And, In Any Case, Is Not Estopped From Raising it.**

Sorensen's conclusion that Esseplast's compulsory counterclaim somehow creates a judicial estoppel is surreal. Sorensen claims that because Esseplast's counterclaims are premised on the Declaratory Judgment Act Esseplast is "estopped from arguing for a stay of the present litigation." Opposition at pp. 6-7. Sorensen's argument completely ignores the common sense notion of competing interests. Esseplast is required to bring any claims that it may have in response to Sorensen's Complaint. Fed. R. Civ. P. 13(a). Because Sorensen has already sued Esseplast, the purpose of the Declaratory Judgment Act (28 U.S.C. §2201 *et seq.*) to alleviate the delay and uncertainty accompanying the threat of a patent lawsuit has been relieved – Esseplast will have its rights determined by the Court. *Accord Sony Elecs., Inc. v. Guardian Media Techs., Ltd.* 497 F.3d 1271, 1284-85 (Fed. Cir. 2007). Nevertheless, Esseplast realizes the tremendous waste of time that the parties may be put through if forced to litigate Esseplast's alleged infringement of the '184 patent given its expiration and its current status in reexamination. Esseplast asserted the claims that it was aware of pursuant to Rule 13(a) in its Counterclaim, but this does not in any way preclude Esseplast from seeking relief from this litigation until the scope of the litigation is truly settled; that is, until the PTO is finished reexamining the '184 patent.

Sorensen also claims that Esseplast did not demonstrate that it would suffer any harm in the absence of a stay. Opposition at p. 7. This allegation is wrong. Esseplast's first reason supporting its request for a stay is the preservation of judicial economy by avoiding the needless litigation of a patent in reexamination. Motion at p. 5. Moreover, if discovery were to proceed now, Esseplast, not Sorensen, would bear much of the burden of such discovery given the relative size of the parties and the fact that Esseplast is a going concern. That potential waste of both judicial and party resources represents a hardship to the Court and Esseplast that can easily be avoided by entering a stay pending the reexaminations of the '184 patent.

**C. Sorensen's Claimed Prejudice is His Own Fault and Does Not Support Denying a Stay.**

**1. The Inability to Name Fictitious Defendants in This Case Does Not Amount to Prejudice.**

Sorensen's decision to include Doe defendants and his inability or unwillingness to identify his true defendants cannot amount to prejudice. If Sorensen is allowed to use his Doe defendants to defeat Esseplast's request for a stay, it will countenance the pleading of Doe defendants as a way to bootstrap a claim of prejudice in connection with every request for a stay pending reexamination. The mere pleading of Doe defendants is contrary to the procedures for amending a complaint to identify previously unidentified defendants as provided for in the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 15(c).

Sorensen also claims that his failure to identify possible additional parties to this lawsuit after waiting two years to file suit amounts to prejudice. Sorensen was free to file this lawsuit prior to the PTO determining that the '184 patent is subject to substantial questions of patentability. However, he chose to wait until the patent was nearly expired. This lack of diligence cannot amount to prejudice in the face of a request for a stay pending the PTO's reexamination.

**2. Esseplast Has Met its Duty to Preserve Evidence and Sorensen is Not Prejudiced in This Respect.**

Pursuant to its discovery obligations under the Federal Rules of Civil Procedure, Esseplast has taken actions to preserve evidence. Sorensen's claims that evidence will be lost are speculative. To the contrary, the relevant evidence in Esseplast's possession, custody, and control will be preserved as Esseplast has notified its employees and its manufacturer of the need to preserve evidence. Lundell Decl., ¶¶ 2-3.

Sorensen's fears that evidence is slipping away while the PTO reexamines the scope of the '184 patent are unfounded. If this case proceeds after the reexaminations, Esseplast has every intention of meeting its discovery obligations. Because relevant evidence will be preserved, Sorensen cannot, absent some other reason with a demonstrated factual basis, conjure prejudice out of the prospect of even a lengthy reexamination.

**3. The Fact That the '184 Patent is Subject to Reexamination is Not, Contrary to Sorensen's Arguments, Prejudicial.**

Sorensen's argument that he will be prejudiced because there are multiple reexaminations pending is a *non sequitur* to this analysis. Indeed, it was not Esseplast's decision to submit the '184 patent to the PTO for reexamination. However, the request seems well-founded given the numerous issues of patentability identified by the PTO pursuant to the requests for reexamination. Again, Esseplast's motion for a stay should come as no surprise to Sorensen considering that Sorensen filed this lawsuit after the PTO ordered reexamination of the '184 patent in a first proceeding, and was considering ordering a second reexamination in a second proceeding.

Esseplast's desire to postpone litigation until it is clear that there is something to litigate is hardly a "tactical" maneuver. It is a maneuver of common sense insofar as Sorensen is proposing that the parties start discovery at a time when the parameters (that is, the scope of the claims of the '184 patent) are currently undergoing reexamination before the PTO.

Esseplast's proposed stay is not "indefinite," but rather lasts only until the PTO completes its reexaminations. If the '184 patent does not survive reexamination, the stay becomes permanent. "Serendipitous" or not, the PTO twice granted reexamination on Sorensen's patent pursuant to third parties' requests.

Finally, suffice it to say that neither the size of this litigation nor the reality that the PTO granted reexamination on the '184 patent provide any realistic support for Sorensen's argument that he is somehow prejudiced.

**4. Procedural Parity With *Black and Decker* is of No Moment to This Analysis.**

It is unclear what relevance Sorensen's discussion of a consolidated claim construction hearing has to the instant question of whether a stay should be entered. If the Court wishes to construe the claims of the '184 patent once for all of the '184 patent-related cases on the Court's docket, the Court is free to do so without worrying about "procedural parity." Indeed, Sorensen cites no authority to support such a notion. And, because claim construction is an issue for the Court to resolve by reference to the patent and the associated intrinsic evidence, it is unlikely that

discovery in this case or in any other pending matter will have a significant impact on the Court's final construction. Accordingly, the procedural parity, or lack thereof, is of no moment to the Court in determining whether Sorensen would be prejudiced by a stay. As Sorensen has failed to identify any cognizable prejudice that he would suffer as a result of a stay in this case pending the outcome of the PTO's reexaminations of the '184 patent, Esseplast's motion should be granted.

## III. CONCLUSION

Sorensen is essentially asking for a fishing expedition, largely at just Esseplast's expense, into Esseplast's business while the scope of the '184 patent is being resolved by the PTO. However, the scope of the '184 patent is crucial in this litigation as it will ultimately determine whether Sorensen's claims survive, and if they do, the scope of discovery. Sorensen failed to identify anything about this particular case that makes it a poor candidate for a stay pending the PTO's reexaminations of the '184 patent. To the contrary, Sorensen's arguments highlight the facts that this case is even better situated procedurally for a stay than the other cases that have been stayed. Furthermore, Sorensen's arguments of alleged prejudice are hardly credible given his own two-year delay in bringing this suit in the first place. Accordingly, Esseplast respectfully requests that the Court stay this case completely pending the outcome of the '184 reexaminations.

Dated: March 6, 2008

DLA PIPER US LLP

By /s/ Alan Limbach
ALAN LIMBACH
ELIZABETH DAY
GREGORY LUNDELL
Attorneys for Defendant

## PROOF OF SERVICE

I hereby certify that on March 6, 2008, I caused the foregoing DEFENDANT ESSEPLAST'S REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING REEXAMINATION OF U.S. PATENT NO. 4,935,184 to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

*Attorneys for Plaintiff*

J. Michael Kaler (158296)
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, CA 92121
Phone: (858) 362-3151
Fax: (858) 824-9073
michael@kalerlaw.com

Melody A. Kramer (169984)
KRAMER LAW OFFICE
9930 Mesa Rim Road, Suite 1600
San Diego, CA 92121
Phone: (858) 362-3150
Fax: (858) 824-9073
mak@kramerlawip.com

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Gregory J. Lundell
Attorneys for Esseplast USA (NC), Inc.

ALAN A. LIMBACH (Bar No. 173059)
alan.limbach@dlapiper.com
ELIZABETH DAY (Bar No. 177125)
elizabeth.day@dlapiper.com
GREGORY J. LUNDELL (Bar No. 234941)
greg.lundell@dlapiper.com
DLA PIPER US LLP
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant
ESSEPLAST USA (NC), INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff and Counter Defendant,<br><br>v.<br><br>ESSEPLAST USA (NC), INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants and Counterclaimant. | CV NO. 07-cv-2277 BTM (RBB)<br><br>**DECLARATION OF GREGORY J. LUNDELL IN SUPPORT OF DEFENDANT ESSEPLAST'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE LITIGATION PENDING REEXAMINATION OF U.S. PATENT NO. 4,935,184**<br><br>**Date: March 14, 2008**<br>**Time: 11 a.m.**<br>**Courtroom 15, Fifth Floor**<br>**Hon. Barry Ted Moskowitz**<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

I, Gregory J. Lundell, hereby declare as follows:

1. I am an attorney with the law firm of DLA Piper US LLP, attorneys of record for Esseplast USA (NC), Inc. ("Esseplast"). I am licensed to practice law in the state of California and admitted to appear before this Court. The matters contained in this Declaration are of my personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

///

2. Jim Doyle, a Senior Vice President with The oneCARE Company ("oneCARE"), which is a parent company to Esseplast, sent an electronic communication to all Esseplast employees regarding this litigation. The message identified the accused product and stated that while the case is pending, no documents related to the lawsuit should be destroyed, including, but not limited to: electronic or printed copies of documents, emails, schematics, drawings, advertisements, and sales records.

3. Flora Tseng, the Country Manager in oneCARE's Hong Kong office, delivered a letter to Esseplast's third party manufacturer, describing the necessity of document preservation in light of this litigation. Ms. Tseng's letter identified this patent infringement case, the UPC number and item code of the accused product, and requested the maintenance of all electronic and printed documents or any other physical evidence associated with the accused product.

4. Attached as Exhibit A is a true and correct copy of the United States Patent and Trademark Office's Order granting a second reexamination proceeding of United States Patent No. 4,935,184 on February 21, 2008.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on this 6th day of March, 2008 at East Palo Alto, California.

/s/ Gregory J. Lundell
Gregory J. Lundell
DLA PIPER US LLP

# EXHIBIT D

**Kramer Law Office, Inc.**
9930 Mesa Rim Rd., Ste. 1600
San Diego, California 92121
Phone 858/362-3150
Fax 858/824-9073

Melody A. Kramer, Esq.
mak@kramerlawip.com

VIA FAX 650-687-1182

June 24, 2008

Alan A. Limbach
DLA Piper USA LLC
2000 University Avenue
East Palo Alto, CA 94303-2214
Facsimile: (650) 833-2001

RE: Sorensen Research & Development Trust v. Esseplast USA (NC) Inc.
Case No. 07cv2277 JAH BLM
Request for agreement to conduct limited discovery during stay for the purpose of preserving evidence.

Dear Mr. Limbach:

I have not received any response to my second letter regarding preservation of evidence dated June 4th requesting an agreement for preservation of certain items of evidence pending lift of stay of this case. Therefore, I am left to assume that your client is unwilling to cooperate with us and we will have no option but to make a request directly to the Court pursuant to the Order for Stay.

Be advised that on June 3, 2008 Judge Moskowitz granted our request for preservation of evidence in circumstances similar to those in this case, therefore we are confident that we will prevail in a request for the limited discovery we have requested from you.

Enclosed please find a copy of the transcript in the referenced Black & Decker hearing and resulting order wherein Judge Moskowitz granted my client an exception to stay to conduct certain items of discovery, including conducting a plant inspection. As you can see, there is every reason to believe that Judge Moskowitz would also grant a motion allowing us to conduct the same type of discovery of Esseplast.

Mr. Limbach
June 24, 2008
Page 2

If your client would like to avoid the necessity of motion practice on this issue, please reconsider your position and let me know immediately. Otherwise we will be filing a motion shortly.

Sincerely,

Melody A. Kramer

enclosure

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, et al., Plaintiff, vs. THE BLACK & DECKER CORPORATION, a Maryland corporation, Defendants. | ) Case No. 06CV01572BTM |
| | ) San Diego, California ) June 3, 2008 ) 9:309 a.m. |

Motion Hearing

BEFORE THE HONORABLE BARRY TED MOSKOWITZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

*For the Plaintiff:*

Kaler Law Offices
J. Michael Kaler
9930 Mesa Rim Road St. 200
San Diego, CA 92121

Kramer Law Office
Melody A. Kramer
9930 Mesa Rim Road, St.1600
San Diego, CA 92121

*For the Defendants:*

Niro, Scavone, Haller & Niro
Raymond P. Niro, Jr.
181 West Madison Street,
Suite 4600
Chicago, IL 60602

Jaczko Goddard
Allison H. Goddard
4401 Eastgate Mall
San Diego, CA 92121

*Official Reporter:*

Barbara Harris CM/RPR/CRR
880 Front Street
San Diego, CA 92101
619-990-3116

**San Diego, California - June 3, 2008, 9:30 a.m.**

THE CLERK: Number 1 on calendar, 06cv1572, Sorenson vs. Black & Decker, on for motion hearing.

THE COURT: Appearances, please. 09:45:15

MS. KRAMER: Good morning, your Honor. Melody Kramer on behalf of plaintiff.

MR. KALER: Good morning, your Honor. Michael Kaler on behalf of plaintiff.

THE COURT: Good morning. 09:45:23

MR. NIRO: Good morning, your Honor. Raymond Niro, Jr., on behalf of Black & Decker, defendants.

MS. GODDARD: Good morning, your Honor, Allison Goddard on behalf of the Black & Decker defendants.

THE COURT: Good morning to everybody. First, just 09:45:35 to make sure we take care of the sealing things first, there are some things and I'll just go over them.

Your confidential supplement to your first motion for exception to the stay, it had some exhibits attached. It was a question as to whether they should all be sealed. 09:45:58

MS. KRAMER: Your Honor, the reason for that request was because the documents the form that basis that identify this subsidiary that was merged out of existence came from a document that was --

THE COURT: Let's just quickly go over it. Does 09:46:17

anyone dispute that the trademark licensing agreement should be filed under seal?

MR. NIRO: No, your Honor.

THE COURT: No. All right. So that one will be filed under seal. Then the next exhibit was, it looks like, a list of the trademarks. It's Schedule I Black & Decker Corporation trademark in the United States. Isn't this all public information, the eight pages? 09:46:31

MS. KRAMER: I'm sorry, your Honor, which exhibit are you talking about? 09:46:57

THE COURT: It's attached to the -- it's the exhibit that is attached to the trademark licensing agreement.

MR. NIRO: Yes, this is part of the agreement, and I think that's why it's confidential and it references -- 09:47:12

THE COURT: But it's all public information; right?

MR. NIRO: I don't know if -- on the upper hand, there is -- the left-hand corner, it references a license agreement between B & D, Inc., and B & D U.S., Inc., and these will be subject to the license agreement. 09:47:28

I don't dispute that the trademarks themselves are public information, but this is part of the license agreement document and references that agreement as well.

THE COURT: Is there anything else on there that is confidential? 09:47:47

MR. NIRO: I would say only the markings on the top part of each page of the document that reference the license agreement and indicate when it was updated and the person who was responsible for that, Kate Wheeler.

THE COURT: I am going to overrule your request in 09:48:09 that regard. Because it's your claim of confidentiality, you are going to have to file the public documents.

So, in other words, I'm not going to make you go through the effort because really all you are doing is complying with the protective order in good faith. 09:48:20

So what you'll have to do is those things that I don't find to be entitled to be filed under seal, you will just file a pleading that contains the public exhibits that were attached to the confidential statement, the plaintiff's first motion for exception to stay. Okay? 09:48:40

So you just --

MR. NIRO: Redacting the top portions, your Honor?

THE COURT: Yes, you can redact, in the top left-hand corner, on each of the eight pages, but the rest is all public information. And keep in mind, because this will 09:48:53 become a problem later on, that if part of the document is not confidential, then that should not be treated as such. Okay?

All right. The next one is the articles of organization of Black & Decker Maryland, LLC. Aren't 09:49:18

articles of organization publicly filed?

MS. KRAMER: Your Honor, that is reference to Exhibit -- is that A through D of the plaintiff's --

THE COURT: It's Exhibit B of your confidential supplement to the first motion for exception to stay. 09:49:37

MR. NIRO: Your Honor, we did not designate that as confidential.

MS. KRAMER: It was my intention that Exhibits A through D I believe would be filed publicly and only E, which was the agreement that we just talked about, be under seal. 09:49:53 So I apologize if they ended up on the wrong document.

THE COURT: Exhibit A is the trademark licensing agreement with the attachment.

MS. KRAMER: I apologize. That's the wrong document then. And as to Exhibit -- 09:50:14

THE COURT: The confidential supplement, this wasn't filed under seal yet, was it?

THE LAW CLERK: No.

THE COURT: Okay.

MS. KRAMER: In response to your question, Exhibit 09:50:30 B, I think that is a public document, but I defer to Black & Decker on that.

MR. NIRO: It is, your Honor. We never designated that as confidential. We have no objection.

THE COURT: And then Exhibit C, an assignment. 09:50:41

MR. NIRO: That is confidential, your Honor.

THE COURT: This is the assignment of fees under the trademark, trademark licensing agreement. Okay. I would agree that that's -- for the same reason, that the trademark, it's confidential proprietary information. It's business 09:51:03
information as to how Black & Decker does their business and it could affect -- give an advantage to competitors.

The next one is D, articles of merger.

MS. KRAMER: Your Honor, I did get that from a public source. 09:51:23

THE COURT: Okay, so that shouldn't be confidential.

Article E, I mean Exhibit E, was the memorandum of points and authorities in support of motion for partial summary judgment piercing the corporate veil. 09:51:37

MS. KRAMER: And that came from the pleading that was filed under seal that had redactions related to the agreement which was Exhibit A.

THE COURT: Okay. So I will leave that.

MS. KRAMER: I'm sorry, Exhibits A and C. 09:51:49

THE COURT: So the only things we are talking about then that Black & Decker has to file is the list of the trademarks redacted, the top left hand notation; the articles of organization; and the articles of merger. Okay?

So you could just file -- you could file a pleading 09:52:12

that just says -- the face could just say, "Attached are the following which were made part of the confidential supplement to plaintiff's first motion, et cetera. That's all. And then just attach them and we will have that filed.

So with that done -- can you do that by the end of the week? That will be pretty easy. 09:52:34

MR. NIRO: Yes, your Honor.

THE COURT: Okay. So I will direct that this be filed under seal then, which is the confidential supplement. Okay. 09:52:52

There was one other, Black & Decker's confidential response to plaintiff's confidential supplement. This has the reported transcript of -- I think this is a proceeding before Judge Bencivengo, Magistrate Judge Bencivengo.

MS. KRAMER: Your Honor, I don't know of any reason why that needs to be under seal. These particular transcripts were just a default for attorneys' eyes only designation always. 09:53:20

THE COURT: Unless -- did she seal the proceedings at the time? 09:53:32

MS. GODDARD: Your Honor, the reported transcripts of these conference calls are not part of any record of the court. They were done by the parties. They were made by the parties to document what we discussed in our informal discovery calls to Judge Bencivengo, so they have never been 09:53:46

a part of the record like a transcript would be, for example, like a hearing in this court.

THE COURT: But it should have been. I mean, it resolves -- if it's anything other than settlement conferences they should be. 09:53:59

MS. GODDARD: Right.

THE COURT: So unless Judge Bencivengo said that it's to be confidential, I don't -- unless it's going to disclose something --

MS. GODDARD: I guess, just to clarify, the 09:54:14 reporter here was not a court -- was not someone who was retained or hired by the court. The parties hired that person to document just what went on.

THE COURT: Right. But what went on is a public proceeding. 09:54:26

MS. GODDARD: As part of a discovery conference.

THE COURT: Right. Which is a public proceeding.

MS. GODDARD: Okay.

THE COURT: And so unless there is something in here -- and it's very brief. Unless there is something in 09:54:35 here that you think is proprietary information and could somehow, its disclosure, harm the business of Black & Decker, as a revelation of a trade secret, I don't think that it should be filed under seal.

MR. NIRO: I don't think there is anything in that 09:55:03

transcript that would be confidential.

THE COURT: Okay. So why don't you attach this to the same pleading.

MS. GODDARD: Will do.

THE COURT: And then so your pleading will just say here are the following things that have otherwise been filed as attachments to sealed papers. Okay? And so then this will be filed under seal as is also because you are going to publicly file that one. 09:55:15

Okay. That takes care of the preliminary matters, so why don't we get to the exceptions now. Go ahead. 09:55:32

MS. KRAMER: Thank you, your Honor.

THE COURT: Let's do one at a time, so what you want to do, why they say you don't need to do it, and then I'll rule. 09:55:56

MS. KRAMER: Okay. On each of my four items?

THE COURT: Right.

MS. KRAMER: Okay. The first item is we have asked -- and, again, the context of this was we just understood a few months ago that the court would entertain a motion for some limited discovery to preserve evidence while the stay is in place. 09:56:04

The first item is the production of corporate records for this Black & Decker subsidiary that was merged out of subsistence since the stay was entered. 09:56:19

That entity has to do with the agreement that is filed under seal, and it relates to a connection between the original parent company that we sued and the third -- third or fourth tier subsidiary that they claim is the only responsible party for manufacturing or marketing. 09:56:37

We started out with one defendant. They said, "Oh, we don't manufacture or market anything," so it has become this corporate shuffle. Because of that we need to have the discovery.

And they keep moving the corporations around. And 09:56:48 so that's why we are asking on this company, that was a material part of our motion to pierce corporate veil, that we be allowed to get discovery of that information before it gets merged and we can't find it anymore when the stay is lifted. 09:57:06

THE COURT: Well, I'm not sure exactly what information you want, because even if I were to grant the request for an exception to the stay and allow certain discovery, I think we would be back here arguing over all the individual discovery issues. So I need to understand a 09:57:20 little more.

In their papers they say that there is a -- and I think they cite or quote the stipulation that they propose. They're saying, "Look, we're not trying to -- if you win this case, Black & Decker, all or some of its entities are going 09:57:35

to pay, you are going to get paid, and if it's not paid from one it will be paid from the other," and they propose that.

So if collection is the issue, I'm sure something could be worked out so that's not the issue. So I'm not really sure what the issue is. 09:57:51

MS. KRAMER: Well, the issue, if you recall, the first motion, first substantive motion, was a motion for summary judgment to dismiss Black & Decker Corporation under the claim that they don't manufacture and market anything, which is not accurate. And so we have had this opportunity 09:58:03 to do discovery and we are trying to find out which entities.

I understand they don't want the public corporation to be a named defendant, but that's who we communicated with entirely for all the time prelitigation. I understand they want to just substitute in players and say, you know, "Don't 09:58:21 sue this one, sue this one."

I don't think it's appropriate factually or legally. That's why we haven't agreed to that.

THE COURT: Ultimately what do you want to accomplish? 09:58:33

MS. KRAMER: I would like to have Black & Decker to be considered a joint enterprise as requested so we don't have to play these corporate games, which they have objected to all this time.

THE COURT: Is the question who was -- which 09:58:44

corporate entity was actually manufacturing the infringing product? Is that the question?

MS. KRAMER: Either manufacturing, marketing, selling, yes, any of the infringing activities, inducing and so forth. 09:59:01

THE COURT: Right. Of course, all the other. Have you sent an interrogatory asking?

MS. KRAMER: We have sent a lot of discovery asking and they deny that Black & Decker Corporation has anything to do with manufacturing or marketing. 09:59:14

THE COURT: And who do they say manufactures, markets?

MS. KRAMER: Black & Decker U.S., Inc., which is four levels down.

THE COURT: And what type of discovery do you want 09:59:23 to take on this?

MS. KRAMER: Actually as to this one subsidiary I would just like one deposition to understand what the role is and to ask about that agreement that you have in front of you. That would be sufficient for us. 09:59:38

THE COURT: And how long do you think the deposition would last?

MS. KRAMER: I can't imagine it would take more than two hours. Probably less than that. It could be done by telephone. 09:59:47

THE COURT: Gee, you're being reasonable.

MS. KRAMER: I try to be reasonable now and then. That's what we are requesting.

MR. NIRO: Thank you, your Honor. And I think the court hit it on the head by saying that this is the type of discovery that can be flushed out in the event that the stay is ever lifted. This is information which Black & Decker has on litigation hold right now. 10:00:01

And the reason that the stay was entered in the first place was to avoid wasting judicial resources and the parties' resources on discovery issues like this that can be addressed after the stay is lifted. 10:00:21

There has been no showing whatsoever that there is a need to preserve evidence that would otherwise be unavailable after the stay. And that was the one exception to the stay that was lifted in your Honor's order in Helen of Troy. 10:00:35

This is not a collection issue. Like you said, the Black & Decker Corp., the ultimate parent of all Black & Decker entities, has agreed to pay any judgment or satisfy any judgment to the extent it's not done by its subsidiaries. 10:00:51

It's not a discovery issue because we have agreed that if they serve a discovery request on one Black & Decker entity we search the records of all the Black & Decker entities. 10:01:06

We are not saying, well, that request was served on the Black & Decker Corp., so we are not going to give discovery because the documents belong to B & D U.S., Inc. We are turning over all of the documents from all of the entities. 10:01:19

So it's a collection issue. It's not a discovery issue. There is no relevance or no bearing on infringement, validity, damages.

It's just there is no corporate shuffle. There is no -- the discovery is not even pertinent, let alone critical, to obtain now because it's in jeopardy of not being around after the stay is lifted, if the stay is lifted. 10:01:30

It's our position that the patent is not going to make it through reexamine and all this is moot. Obviously they disagree, but that was flushed out when the court entered the stay in the first place. 10:01:49

These are also issues that were raised in plaintiff's motion. They filed a massive motion for summary judgment to pierce the corporate veil. That was addressed to your Honor and considered and your Honor issued a ruling saying it's premature right now, let's wait until after the stay. Then we can address these corporate veil issues. 10:02:03

THE COURT: Okay. My ruling on this is I'm going to grant the request. I don't see any prejudice to the defendant in allowing a maximum two-hour telephonic 10:02:20

deposition to determine the various positions in terms of infringement, liability of, I guess it's Black & Decker Maryland.

I don't see any problem in allowing the plaintiff to get the parties positioned so if the stay is lifted then 10:02:40
we can focus on all the patent issues rather than on the party issues. And this really goes to who should be a party.

I really think ultimately a stipulation can be worked out. I doubt Black & Decker is going to try to play hide the ball in terms of liability and say, "Well, this 10:02:59
person, this entity, manufactured those products and that entity is no longer in existence."

I really don't think that that's ultimately going to be the issue. But I think plaintiff is entitled to some protection to explore that. 10:03:15

So, I'm going to grant it. It's limited to two hours. I thought that was a reasonable request. And that's two hours of direct testimony by the deposing party, and any time that the defense wants to take in adding questions would be in addition to the two hours. 10:03:35

And exclude, if there are objections, and I'm sure attorneys still do this, but years ago when I practiced I remember when I would ask a question the next thing that happened was, "Objection; relevancy, hearsay, authenticity," you know, and they have a list and they would go down their 10:03:58

list.

If you do that that comes out of the two hours also. And I frown on that. So keep that in mind. So two hours straight to see what was the relationship between Black & Decker Maryland and what happened. I think it should be 10:04:15 sufficient.

All right. Next?

MS. KRAMER: Your Honor, the next one, the grounds are basically the same. We detailed it a little more in the pleadings, but there is a Black & Decker Holdings LLC, Black 10:04:27 & Decker Inc., some name swapping. I would like just an hour telephonically with the knowledgeable person on each of those entities.

MR. NIRO: Well, our position is the same, your Honor. This evidence is not going away. And this is the 10:04:44 type of thing that -- this is the reason the stay was entered. I could tick off a laundry list of discovery issues that we would seek from them.

There was actually a court order for plaintiff to produce documents on its license agreements which then was 10:04:56 stayed so that they didn't have to produce those documents, and it just seems like this is just circumventing the stay order.

THE COURT: Well, not really. The stay order is to stay what may be unnecessary discovery on the interpretation 10:05:11

of the patent, for the Markman hearing, for issues concerning infringement, if the patent doesn't survive re-examination, but it has nothing to do with the identity of the parties.

I don't really see any harm in getting that straightened out now, so we can get right into the patent 10:05:33 issues and the infringement, the patent interpretation or construction and the infringement issues, and damages relating to that, if those are going to be viable issues when the stay is lifted.

If the stay isn't lifted, this really isn't going 10:05:48 to be that prejudicial to provide a one-hour telephonic deposition as to Black & Decker holdings.

MR. NIRO: We understand.

THE COURT: All right. So that's been granted, again, by telephonic deposition, one hour. Okay. 10:06:02

MS. KRAMER: Your Honor, to clarify, that's one hour for each of the two entities? It may be the same person, I don't know.

THE COURT: That's right, because it's Black & Decker's -- B & D Holdings and Black & Decker Holdings, Inc. 10:06:19

MS. KRAMER: Yes. Thank you, your Honor. Number three is inspection of the Porter Cable manufacturing facility. Again this is not owned or controlled by any of the defendants, to our knowledge.

It was identified after numerous requests. It was 10:06:33

finally identified just prior to entry of the stay.

Because it is a third party they don't have the same obligations for preservation of evidence, and with a manufacturing plant I don't know if they are still manufacturing these parts. 10:06:50

There are very few Porter cable parts that are part of the litigation. This facility is in Missouri. We could schedule a plant inspection and then do follow-up depositions or discovery after the stay is lifted, but that's all we are asking. 10:07:03

THE COURT: How are you going to do this?

MS. KRAMER: Pardon me?

THE COURT: Aren't you going to have to make a motion in Missouri?

MS. KRAMER: I don't -- your Honor, we would have to subpoena that. 10:07:08

THE COURT: Right.

MS. KRAMER: We would have to subpoena that inspection, you're correct.

THE COURT: Well, wouldn't it be a Rule 34 examination? There is the rule for examining places, buildings. 10:07:18

MS. KRAMER: That is correct, your Honor. I do apologize. That's correct.

THE COURT: That's okay. 10:07:31

MS. KRAMER: Just so you are aware, Mr. Niro's firm has already advised us that they represent this manufacturer, so we do have a common --

THE COURT: It's Rule 34, for entering onto land for inspection and other purposes. 10:07:49

MS. KRAMER: So, your Honor, we would ask for leave to do that.

THE COURT: It's really a combination of Rule 45, a subpoena, and Rule 34, because 34(C) says, "As provided in Rule 45, a nonparty may be compelled to produce documents and 10:08:04 tangible things or to permit an inspection."

MS. KRAMER: And, again, this isn't asking for discovery from Black & Decker.

THE COURT: What are you going to do during the inspection? 10:08:15

MS. KRAMER: We want to inspect the molds and the manufacturing equipment. If you want more details I need to defer to Mr. Kaler who has done the other plant inspections that we have already done.

THE COURT: What actually would you do? You go up 10:08:26 and you go in and what do you do?

MR. KALER: Basically, your Honor, we have them produce all the molds used for the accused products. We come in. We photograph the molds and inspect them. Typically we bring our technical expert witness with us for the inspection 10:08:40

of the molds. And basically we do still photographs and video of the tooling equipment that is utilized so that we have that preserved.

The concern is that if these products go out of production before the stay is lifted, these molds typically end up being cut up for scrap metal and recycled. They may not exist in a year or two if production is no longer ongoing. 10:09:00

THE COURT: Any opposition?

MR. NIRO: Yes, your Honor. This is -- I guess unlike the Black & Decker Maryland and Black & Decker Holdings issue, this does go to the question of infringement. And Revere Plastics is a third party. They are not a party to this litigation. 10:09:14

The plaintiff wrote to Revere directly, accusing them of infringement, threatening a lawsuit against Revere Plastics, so they understand the need to preserve evidence just like Black & Decker does. 10:09:29

And if there is some plan to destroy molds, we'll certainly notify the court. We will notify the plaintiff at that time. But that's just not the case here. 10:09:49

And your Honor is correct, that this would be handled -- would have to be handled through a subpoena, third-party subpoena in this case, to Revere Plastics and dealt with by the court. 10:10:03

THE COURT: Unless, if you represent them, there is a consent, you know, a consent to jurisdiction of this court to enter the order allowing for it.

MR. NIRO: I don't think they have consented to jurisdiction here. Just in response to the letter from plaintiff to Revere Plastics, they retained our services. I know Ms. Goddard -- 10:10:15

THE COURT: Normally when you want to get discovery from a nonparty that is out of district you have to go to the court in that district. 10:10:30

MR. NIRO: I think that would still apply here.

THE COURT: Except if they consent to jurisdiction in the court where the underlying case is pending.

MR. NIRO: I haven't talked to Revere Plastics about that, but I would be surprised if they consented to that. But, again, if an issue comes up, where if they are scheduling to destroy this plant or destroy some molds, we will certainly notify the court and notify plaintiff and at that time they can inspect. 10:10:46

THE COURT: What obligation -- if I have no jurisdiction over them, what can I do to them? 10:10:59

MR. NIRO: I don't think anything, Judge.

THE COURT: Right. So that's kind of a hollow offer.

MR. NIRO: If there is no jurisdiction then there 10:11:16

is no -- then there is nothing that we are talking about today.

THE COURT: If they go to Missouri and they get an order there, then there would be jurisdiction in Missouri, so if they violated that order they would be held in contempt. 10:11:25

MR. NIRO: Right. If that's what your Honor is suggesting, that they issue a subpoena from the Missouri court, we can address it there.

THE COURT: They have to unless Revere consents to jurisdiction in this court. 10:11:37

MR. NIRO: Right.

THE COURT: I'm going to grant that. The reason I am going to grant it is they are not a party. They are really under no obligation to keep the molds and store the molds at their expense, and I think examination of the molds is appropriate. 10:11:48

If they were a party then I would feel differently at this point. But since they're not, you really need to preserve evidence. And since I don't have jurisdiction over them, the only way to do it is to allow you to apply for a Rule 45 and Rule 34 subpoena. 10:12:03

MR. NIRO: Your Honor, just to clarify, what the court is granting is that plaintiff can issue a Rule 45 subpoena; is that correct?

THE COURT: Right. 10:12:21

MR. NIRO: Okay.

THE COURT: I'm allowing them to take that discovery, to apply for that discovery.

MR. NIRO: To apply for the discovery.

THE COURT: Right. 10:12:29

MR. NIRO: Okay. And the Missouri court can deal with it as they see fit.

THE COURT: There may be rules in Missouri that wouldn't allow it. Of course, you know what they call Missouri, the show me state, so they'll show you. 10:12:41

MR. NIRO: I just want to be clear, because this is a third party. It's outside the jurisdiction of the court. What this court is doing is allowing plaintiff leave to issue a subpoena to attempt --

THE COURT: Right. They issue the subpoena under 10:12:58 Rule 45 and Rule 34 to the company.

MR. NIRO: Right.

THE COURT: If the company refuses they go into a district or magistrate judge in whatever district in Missouri they're in, and they ask to compel enforcement, and there 10:13:07 would be litigation over to what degree that subpoena would be enforced.

MR. NIRO: All right. Thank you, Judge.

THE COURT: So I am authorizing them to take discovery without prejudice to Revers's rights in opposition 10:13:22

to that discovery.

MS. KRAMER: If I could ask for one matter of clarification. There was a big to do in front of the magistrate about a classification of the identity of the manufacturer. It was belatedly designated attorneys' eyes 10:13:41 only. The magistrate moved it to being called confidential. And it was mentioned here in a public courtroom by Mr. Niro.

Am I to understand that we are allowed to -- we are not going to be in violation of the protective order by proceeding as you just ordered that we are allowed to do, 10:14:01 which would involve mention of the name of a party?

THE COURT: Right. Their name is public.

MS. KRAMER: All right. Thank you. Then our fourth one was --

THE COURT: Now, what may be confidential is what 10:14:14 they were doing for Black & Decker. In other words, if they were a supplier or whatever and the relationship there. That may be what they are contending is confidential. But your subpoena to them would not have to be confidential because they are a public entity. Their name is public. They do 10:14:32 business.

MS. KRAMER: But if there are proceedings in the court in Missouri relating to it we would have to explain why.

THE COURT: That's up to Missouri as to whether 10:14:41

that's sealed or not sealed.

MS. KRAMER: Okay. Our fourth one that we requested, and there may need to be a little modification at this point, we discovered -- and I actually looked at it, we had the information earlier, but we didn't discover it until 10:14:54 after entry of the stay, that our repeated discovery responses we have gotten from Black & Decker to identify all the places where they were manufactured never included a plant in the UK.

And we had ordered some parts and found that the 10:15:09 clam shell, which is the plastic part that is at issue in this case, that there were a number of them that were manufactured in the United Kingdom.

In this, in the pleadings that the court got, the opposition pleadings, it says that indeed there was a plant 10:15:26 in the UK where these parts were manufactured into the U.S. but it was closed in 2003.

We are very concerned that the identity of this, which clearly fell within the interrogatory that we asked and they answered three times, would have had to disclose this, 10:15:43 and they did not. And if indeed it was closed in 2003, which seems suspect that plants -- that parts from that plant came to us in 2007, but if that's the case, we can't inspect the plant, but if it's a Black & Decker plant we need some assurance that those molds are being preserved. So it's 10:16:08

either inspection or having those molds preserved for after the stay.

MR. NIRO: And this one we can address very easily. Any molds that were used in the UK are now in either the Rinoza facility in Mexico or B & D's U.S. facilities which 10:16:25 plaintiff has already inspected.

They have already inspected these molds. When the manufacturing plant ceased in 2003 the molds were delivered -- for the products that we are talking about at issue in this case -- were delivered to the U.S. So they've 10:16:42 already conducted that inspection.

There is nothing in the UK to inspect. There is no molds. There is no manufacturing going on in the UK.

So this has already been preserved. It's already been addressed. And the manufacturing plant was identified 10:16:55 in documents that were produced in this case.

The packaging slip that plaintiff is relying upon to support its motion was so heavily redacted that we can't -- it doesn't even show anything happening in the U.S. There is no shipment address. There is no recipient address. 10:17:16 There is no address for the DeWalt Service Center.

There was no date on it when they first produced it. And then ultimately in their reply brief we saw that this was a January '07 document. So they have had this document for a year and a half. 10:17:32

It was not produced to us in discovery. It still hasn't been produced in unredacted form, so we can't dig into that specific packaging slip and explain. You know, this could be a product that was made in Europe, sold in Europe, and then was brought to the U.S. for repair. 10:17:51

If we get more information from them, from this packaging slip, after the stay is lifted, we can flush this out. But in terms of the mold and the inspection, that has already occurred in the U.S. plant and in Mexico.

MS. KRAMER: Just to clarify for the court, I do have the packing slips here and it shows where the redactions are. The court is free to look at it. If you order me to turn it over to Black & Decker I would be happy to. 10:18:10

But what really brought us to bring this to the court is the fact for a year of litigation, and I have response after response to an interrogatory that asked for identification of where these products have been manufactured for the time periods from August 7, 2002 to the present, which admittedly in their own pleadings was this UK facility, that it was not disclosed. 10:18:26 10:18:45

And that raises a real problem that they have been not forthcoming about the existence of this evidence. And I know that puts the court in a dilemma because you don't want to get involved in too much discovery at this point, but it is very disturbing that that was not disclosed at all. 10:19:00

THE COURT: Do you want to explain that, respond to why it wasn't disclosed in the interrogatories?

MR. NIRO: It's my understanding that products that were made in the UK were not sold in the United States, and I'm not 100 percent certain of that, but the interrogatory -- 10:19:18 if we had disclosed this UK manufacturing facility which was closed years before the lawsuit was filed and plaintiffs went to the UK and got there and there was no molds, there is no process, there is no manufacturing going on, I think we would be in here on a motion for sanctions. 10:19:36

So, you know, we can certainly provide more detail on this, but they were given every plant where the product is being made, where the molds exist, and they have inspected it, completely, with video, photographs, production drawings for the molds, and all this evidence has been preserved. 10:19:56

And the UK manufacturing facility was disclosed in documentation. I mean, it existed. It just wasn't products that were made there are not subject to the lawsuit. That was our understanding. I think that explains why it wasn't listed there. There is nothing to discover in the UK. 10:20:17

THE COURT: Still, in light of what they have, it's really speculative as to whether there is anything in the United Kingdom concerning these molds. They are representing that they were transported elsewhere and that you have had the opportunity to inspect them in Mexico or the United 10:20:37

States. So unless you have something else, I just don't see that this would be appropriate.

MS. KRAMER: Understood, your Honor.

THE COURT: Now, I don't see any reason why you can't show them the packing slip. It came from them. It 10:20:52
came from Black & Decker, DeWalt.

MS. KRAMER: Well, there are some specific reasons why we do not want to disclose it, all of that, at this point, while there is a stay in place, because we want to follow up and do additional discovery. And if the court 10:21:10
orders us to we will, but I would prefer not to.

THE COURT: I will deny your request number 4 without prejudice.

MS. KRAMER: Thank you.

THE COURT: Okay. Anything else then? 10:21:22

MR. NIRO: No, your Honor.

MS. KRAMER: No, your Honor.

THE COURT: All the -- in other districts, except one case in the Northern District, there have been stays; is that correct? 10:21:32

MR. KALER: If I can address that, your Honor. It is not true that all of the dec relief actions in other districts have been stayed. There is an action in South Carolina which is currently pending motions for Rule 12 for transfer, and also a motion for stay by the plaintiff in 10:21:52

South Carolina.

And as I understand it, as of about a week ago there was a new case filed in Ohio that nothing has happened in yet.

THE COURT: Okay. Again, this may be appropriate 10:22:06 for the parties to bring to the Multidistrict Litigation Panel, but there is only one case where a stay was denied. Right?

MR. KALER: That's correct, your Honor.

THE COURT: And that was Judge Ware in the Northern 10:22:19 District?

MR. KALER: Yes.

THE COURT: And what's the status of that case?

MR. KALER: There is a motion hearing pending and also a status conference on June 30th, your Honor. It is a 10:22:28 substantive motion, not a stay motion, so he's proceeding apace with no current apparent intent to stay the action at present.

THE COURT: Okay. Well, if you were to lose there and the patent were to be declared invalid, then I would 10:22:47 assume that everybody would seek exception to the stay here to apply that as collateral estoppel.

MR. KALER: I'm sure that's the case. And when you have 30-odd cases going on a single patent, that's the risk the plaintiff takes obviously. 10:23:01

THE COURT: Right.

MR. KALER: Thank you, your Honor.

MR. NIRO: Thank you, Judge.

MS. KRAMER: Thank you, your Honor.

THE COURT: All right. We'll do the order and you'll file those papers that were otherwise filed under seal. Okay. Thank you. 10:23:12

MS. KRAMER: Thank you, your Honor.

(This matter was in recess.)

Certificate

I hereby certify that I am a duly appointed, qualified and acting official court reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the aforementioned cause; that said transcript is a true and correct transcription of my stenographic notes; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

Dated: June 9, 2008 at San Diego, California

S/Barbara Harris

Barbara Harris, Official Reporter

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, Plaintiff, vs. BLACK & DECKER CORPORATION, Defendant. | CASE NO. 06CV1572 BTM (CAB) ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR EXCEPTION TO STAY; GRANTING IN PART AND DENYING IN PART MOTION TO FILE DOCUMENTS UNDER SEAL; AND GRANTING REQUEST FOR ORAL ARGUMENT |

For the reasons set forth on the record, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for exception to stay [Doc. 264]. Plaintiff may take limited depositions of the relevant entities as set forth on the record. Plaintiff may also attempt to undertake an inspection of the out-of-district manufacturing facility through appropriate procedural avenues. Plaintiff's request for discovery as to the alleged UK facility is denied without prejudice. The Court also GRANTS IN PART AND DENIES IN PART Plaintiff's motion to file documents under seal [Doc. 265, 271]. Defendants shall file a publicly available version of the documents which the Court ruled should not be sealed within one week of the date of this order. The request for oral argument is GRANTED [Doc. 266].

IT IS SO ORDERED.

DATED: June 3, 2008

Barry Ted Moskowitz

Honorable Barry Ted Moskowitz
United States District Judge

# EXHIBIT E

**Kramer Law Office, Inc.**
9930 Mesa Rim Rd., Ste. 1600
San Diego, California 92121
Phone 858/362-3150
Fax 858/824-9073

**Melody A. Kramer, Esq.**
mak@kramerlawip.com

VIA FAX 704-509-2107 and FED-EX

December 6, 2007

Michelle Zen
Luigi Pavanello
Esseplast USA (NC), Inc.
7600 Statesville Road
Charlotte, NC 28269

**CONFIDENTIAL OFFER OF COMPROMISE**
Subject to Federal Rules of Evidence § 408

RE: Sorensen Research & Development Trust v. Esseplast USA (NC) Inc.
Case No. 07cv2277 JAH BLM

Dear Mssrs. Zen and Pavanello:

Having failed to accept our generous offer for settlement pre-litigation, my client has been forced to file suit against Esseplast. See the enclosed.

My client's prior offer for settlement will remain open (see enclosed), however, the settlement amount will be increased periodically to reflect additional costs and attorney fees expended in proceeding with this case.

It is in your company's best interest to resolve this matter immediately. I look forward to your phone call.

Sincerely,

Melody A. Kramer

enclosures

ORIGINAL

FILED
07 DEC -4 PM 4:31
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

**MELODY A. KRAMER**, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

**J. MICHAEL KALER**, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

Attorneys for Plaintiff JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ESSEPLAST (USA) NC, INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. '07 CV 2277 JAH (BLM)<br><br>**COMPLAINT FOR PATENT INFRINGEMENT (WILLFUL)**<br><br>REQUEST FOR JURY TRIAL |

//

//

Plaintiff JENS E. SORENSEN, as TRUSTEE OF THE SORENSEN RESEARCH AND DEVELOPMENT TRUST ("SRDT"), for its Complaint for Patent Infringement against Defendant ESSEPLAST USA (NC) INC. ("ESSEPLAST"), and DOES 1- 10 allege as follows:

## THE PARTIES

1. SRDT is a California resident, and the trustee of a trust organized according to California law, and owner of all rights to United States Patent No. 4,935,184 (hereinafter "'184 patent") attached hereto as Exhibit A.

2. Defendant ESSEPLAST is a corporation organized under the laws of Delaware, having a principal office located at 7600 Statesville Road, Charlotte, North Carolina 28269, engaged in the manufacture, import, sale, and or offer for sale within the United States, including this District, of various plastic products, including products sold through PetSmart stores.

3. Defendant DOES 1 through 10 are entities, form unknown, who, upon information and belief, are collectively and individually, each involved in the infringing activities described herein.

4. On information and belief, Defendants have acted as agents of one or more of each other during some or all of the times relative to the subject matter of this Complaint.

## JURISDICTION and VENUE

5. This action arises under the Patent Laws of the United States of America, Title 35, United States Code. Jurisdiction is founded on Title 28, United States Code §§ 1331, 1332(a), and 1338(a).

6. On information and belief, venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b) because Defendant ESSEPLAST has committed acts of infringement and has an extensive network of authorized dealers which sell its

products at their regular and established places of business.

7. This Court has personal jurisdiction over Defendant ESSEPLAST under the long-arm statute of California and U.S. constitutional law because Defendant ESSEPLAST ships its products into the Southern District of California, offers those products for sale and sells those products in this district, and maintains a network of authorized distribution arrangements with retailers in this district for the purpose of selling ESSEPLAST products.

**GENERAL ALLEGATIONS**

8. The '184 patent entitled "Stabilized Injection Molding When Using a Common Mold Part With Separate Complimentary Mold Parts," was issued on June 19, 1990.

9. Defendants have been on constructive notice of the '184 patent since its issuance on June 19, 1990.

10. Defendants have been on actual notice of the '184 patented process at least as early as June 2006.

11. Upon information and belief, the Defendants have engaged in design, manufacture, import, sell, and/or offer for sale within the United States, including this District, products that have dual-layer external plastic housings.

12. On information and belief, said products identified herein and as-yet-unidentified products manufactured through the same or substantially similar process are manufactured through processes which incorporate all elements of Claim 1 of the '184 patented process.

13. The Defendants have not obtained a license or any other authorization from the Plaintiff for manufacture, import, sale, and/or offer for sale in the United States of products manufactured through use of the '184 patented process.

**CLAIM FOR RELIEF**

**(Patent Infringement)**

14. SRDT realleges and incorporates herein by reference paragraphs 1 through 13, inclusive, as though fully set forth herein.

15. On information and belief, ESSEPLAST has in the past and does presently make, import into, sell or offer for sale within the United States and this District, products manufactured through processes which incorporate all elements of the '184 patented process. Those products include the Topfin Hand Held Glass Scrubber and any other ESSEPLAST products sold under any name which are manufactured utilizing similar processes, including but not limited to, any other product manufactured using the same injection mold as any of the identified product.

16. Upon information and belief, ESSEPLAST controls the nature and quality of the Accused Products and manufactures these products in accordance with its design and product specifications.

17. ESSEPLAST possesses the manufacturing process information for the Accused Products.

18. ESSEPLAST has been offered an opportunity to refut Plaintiff's infringement analysis or deny infringement, but has not done so.

19. Pursuant to 35 U.S.C. § 295, ESSEPLAST has been requested to provide information about the manufacturing process for the Accused Products that could either prove or disprove the use of the '184 patented process, but has not done so.

20. SRDT also offered to negotiate a license with ESSEPLAST for its use of the '184 patent in the event that ESSEPLAST could not demonstrate that it was not using the '184 patented process in making the Accused Products.

21. Despite the evidence of patent infringement, ESSEPLAST has not procured a license for its use of the '184 patent.

22. On information and belief, ESSEPLAST continues to make, use, sell and/or offer for sale within the United States and this District, and import into the

United States ESSEPLAST products using the '184 patent process, without authority to do so, in violation of 35 U.S.C. § 271, knowing such to be an infringement of the '184 patent, and in wanton and willful disregard of SRDT's '184 patent rights.

23. On information and belief, ESSEPLAST continues to contribute to infringement of the '184 patent and induces others to infringe the '184 patent by virtue of making, selling, using and/or offering for sale within the United States and this District, and importing into the United States, ESSEPLAST products manufactured using the '184 patent process in wanton and willful disregard of SRDT's '184 patent rights.

24. On information and belief, the conduct of ESSEPLAST in willfully continuing to infringe the '184 patent, and to contribute to infringement and induce others to infringe the '184 patent, by the acts alleged hereinabove despite being on both constructive notice and actual notice, is deliberate, thus making this an exceptional case within the meaning of 35 U.S.C. § 285.

25. On information and belief, SRDT has suffered and is continuing to suffer damages by reason of ESSEPLAST infringing conduct alleged hereinabove. The damages for ESSEPLAST's conduct are in an amount that constitutes at least a reasonable royalty for all of ESSEPLAST's sales of the Accused Products during the last six years.

26. On information and belief, the reasonable royalty owed to SRDT from ESSEPLAST should be calculated at no less than eight percent (8%) of gross sales of the Accused Products and according to proof at trial.

27. On information and belief, the reasonable royalty owed to SRDT from ESSEPLAST should be trebled on account of willful infringement by ESSEPLAST, and according to proof at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** SRDT prays that judgment be entered as follows:

a. For a determination that the Accused Processes are presumed to infringe the '184 patent pursuant to 35 U.S.C. § 295;

b. ESSEPLAST is adjudicated and decreed to have infringed the '184 patent;

c. ESSEPLAST is adjudicated and decreed to have contributed to the infringement of the '184 patent and to have induced others to infringe the '184 patent;

e. ESSEPLAST is ordered to account for damages adequate to compensate SRDT for the infringement of '184 patent, their contributory infringement of the '184 patent, and their inducement of infringement of the '184 patent, in the amount no less than eight percent (8%) of gross sales as reasonable royalties for all sales of Accused Products for the past six years and according to proof at trial, and such damages are awarded to SRDT;

f. Such damages as are awarded are trebled by the Court pursuant to 35 U.S.C. § 284 by reason of the willful, wanton, and deliberate nature of the infringement according to proof at trial;

g. That this case is decreed an "exceptional case" and SRDT is awarded reasonable attorneys' fees by the Court pursuant to 35 U.S.C. § 285;

h. For interest thereon at the legal rate;

i. For costs of suit herein incurred;

j. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

SRDT respectfully requests that its claims be tried to a jury.

//

//

DATED this 30th day of November, 2007.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT
TRUST, Plaintiff

Melody A. Kramer, Esq.
J. Michael Kaler, Esq.
Attorneys for Plaintiff

# EXHIBIT A

**United States Patent** [19]

Sorensen

[11] Patent Number: 4,935,184

[45] Date of Patent: Jun. 19, 1990

[54] STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENTARY MOLD PARTS

[75] Inventor: Jens O. Sorensen, Rancho Santa Fe, Calif.

[73] Assignee: Primtec, Rancho Santa Fe, Calif.

[21] Appl. No.: 386,812

[22] Filed: Jul. 27, 1989

Related U.S. Application Data

[63] Continuation of Ser. No. 152,470, Feb. 5, 1988, abandoned.

[51] Int. Cl.[5] ........ B29C 45/16

[52] U.S. Cl. ........ 264/246; 264/255; 264/328.8; 425/129.1

[58] Field of Search ........ 264/245, 246, 255, 328.1, 264/328.8, 328.11, 328.12; 425/127, 129.1, 130

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,543,338 | 12/1970 | Cooper | 264/246 |
| 3,737,272 | 6/1973 | Segmüller | 425/348 |
| 3,832,110 | 8/1974 | Hehl | 425/130 |
| 4,381,275 | 4/1983 | Sorensen | 264/328.8 |
| 4,422,995 | 12/1983 | Schad | 425/129.1 |
| 4,459,256 | 7/1984 | Ziegler | 264/242 |
| 4,508,676 | 4/1985 | Sorensen | 264/328.8 |

FOREIGN PATENT DOCUMENTS

17577 1/1971 Australia.

OTHER PUBLICATIONS

Promat 100-100/100, Nestal.

*Primary Examiner*—Jill L. Heitbrink
*Attorney, Agent, or Firm*—Edward W. Callan

[57] ABSTRACT

A process for injection molding plastic products having a closed end and an open end with laminated walls terminating in a rim at the open end. A first common mold part is combined with a first complementary mold part to assemble a first mold cavity in which the first plastic material is injected until it reaches the portion of the first mold cavity that defines the rim of the product. Portions of the first complementary mold part contact portions of the first common mold part to rigidly secure the mold parts in position in relation to each other in order to impede movement of the mold parts in relation to each other during injection of a first plastic material into the first mold cavity. The first plastic material is shaped such that when it is contained after solidification in a second mold cavity it provides one or more stabilizing regions that rigidly secure the first common mold part in position in relation to the second complementary mold part in order to impede movement of such mold parts in relation to each other during the injection of a second plastic material into the second mold cavity. A second plastic material having different characteristics than the first plastic material is injected until it reaches the portion of the second mold cavity that defines the rim of the product to form a laminated wall.

10 Claims, 5 Drawing Sheets



FW 002




FIG. IA




FIG. IB




FW 004




FW 005

Case 3:07-cv-02277-JAH-BLM Document 1 Filed 12/04/2007 Page 13 of 22



FIG. 4




FIG. 5




FW 006




FIG. 6

FIG. 7



## STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENTARY MOLD PARTS

This is a continuation of co-pending application Ser. No. 07/152,670 filed on Feb. 5, 1988 now abandoned.

## BACKGROUND OF THE INVENTION

The present invention generally pertains to injection molding of plastic products and is particularly directed to stabilizing the dimensions of mold cavities during the injection steps when using a common mold part and at least two complementary mold parts to assemble separate mold cavities for receiving separate injections of plastic materials to produce a thin-walled, hollow plastic product.

The use of a common mold part with at least two complementary mold parts to provide separate mold cavities for receiving separate injections of plastic materials for producing a hollow plastic product is known. In one known prior art method of cyclic injection molding a hollow plastic product, a first mold cavity is defined by a first common mold part and a first complementary mold part; and a second mold cavity is defined by the first common mold part and a second complementary mold part. The method includes the steps of:

(a) combining the first common mold part with the first complementary mold part to assemble the first mold cavity;

(b) injecting a first plastic material into the first mold cavity;

(c) solidifying the injected first plastic material to form a first plastic material component;

(d) combining the first common mold part with the second complementary mold part to assemble the second mold cavity with the first plastic material component attached to the first common mold part so that when the second mold cavity is assembled the first plastic material component is contained within the second mold cavity;

(e) injecting a second plastic material into the second mold cavity while the first plastic material component is contained therein; and

(f) solidifying the injected second plastic material so as to form a second plastic material component that fuses with the first plastic material component to produce a hollow plastic product.

It also is known to expand upon this method by further using a third mold cavity defined by a second common mold part and the first complementary mold part, and a fourth mold cavity defined by the second common mold part and the second complementary mold part. The method further includes the steps of:

(h) during step (d), combining the second common mold part with the first complementary mold part to assemble the third mold cavity;

(i) during step (e), injecting a third plastic material into the third mold cavity;

(j) during step (f), solidifying the injected third plastic material to form a third plastic material component;

(k) during step (a), combining the second common mold part with the second complementary mold part to assemble the fourth mold cavity with the third plastic material attached to the second common mold part so that when the fourth mold cavity is assembled the third plastic material is contained within the fourth mold cavity;



(l) during step (b), injecting the fourth plastic material into the fourth mold cavity while the solidified third plastic material is contained therein; and

(m) during step (c), solidifying the injected fourth plastic material so as to form a fourth plastic material component that fuses with the third plastic material to produce a second said hollow plastic product.

This method has been used for producing hollow plastic products having composite walls of separately injected plastic materials. In performing such method, the first plastic material is injected until it reaches the parting line between the first common mold part and the first complementary mold part; the second plastic material is injected until it reaches the parting line between the first common mold part and the second complementary mold part; the third plastic material is injected until it reaches the parting line between the second common mold part and the first complementary mold part; and the fourth plastic material is injected until it reaches the parting line between the second common mold part and the second complementary mold part.

Typically, all four plastic materials are the same.

## SUMMARY OF THE INVENTION

The present invention provides a method and apparatus for injecting molding hollow, thin-walled plastic products, having a closed end and an open end with laminated walls terminating in a rim at the open end, where relative movement between the common mold part and the complementary mold parts is impeded during injection of the plastic materials.

According to the present invention, the first and second plastic materials have different characteristics, and in the injection molding method described above, the step of solidifying the injected first plastic material to form the first plastic material component (step (c)) includes the step of

(g) shaping the first plastic material component such that when the first plastic material component is so contained in the second mold cavity the first plastic material component provides one or more stabilizing regions that rigidly secure the first common mold part in position in relation to the second complementary mold part in order to impede movement of the first common mold part in relation to the second complementary mold part during the injection of the second plastic material into the second mold cavity, to thereby produce a thin-walled plastic product having controlled dimension in that the wall-thickness dimensions of the second mold cavity are stabilized by the stabilizing regions.

The step of injecting the first plastic material into the first mold cavity (step (b)) includes the step of

(h) injecting the first plastic material until it reaches the portion of the first mold cavity that defines the rim of the product; and

the step of injecting the second plastic material into the second mold cavity (step (e)) includes the step of

(i) injecting the second plastic material until it reaches the portion of the second mold cavity that defines the rim of the product.

When the method of the present invention utilizes two common mold cavities, such as described above, the step of solidifying the injected third plastic material to form the third plastic material component (step (j)) includes the step of shaping the third plastic material component such that when the third plastic material

component is so contained in the fourth mold cavity the solidified third plastic material provides one or more stabilizing regions that rigidly secure the second common mold part in position in relation to the second complementary mold part in order to impede movement of the second common mold part in relation to the second complementary mold part during the injection of the fourth plastic material into the fourth mold cavity, to thereby produce a second thin-walled plastic product having controlled dimensions.

The method of the present invention may also be used for molding a product having a side wall including an approximately longitudinal strip that may be transparent to provide a transparent window in the side wall. This feature is particularly advantageous when it is desired to provide a longitudinal window in the side wall in order to monitor the level of a substance, such as a fluid, contained in the plastic product. In one embodiment, the first plastic material component is shaped to provide at least one stabilizing region that is transverse to a parting line between the first common mold part and the first complementary mold part, whereby the longitudinal strip is defined by the transverse stabilizing region. A transparent window is provided in the side wall by injecting a transparent first plastic material into the first mold cavity. A nontransparent second plastic material is injected into the second mold cavity to provide a nontransparent background for printing in the remainder of the side wall. In an alternative embodiment, the first plastic material component is shaped such that when the first plastic material component is contained in the second mold cavity, the second mold cavity defines at least one unfilled cavity region that is transverse to a parting line between the first common mold part and the second complementary mold part, whereby the longitudinal strip is defined by the unfilled transverse cavity region. In this embodiment, a transparent window is provided in the side wall by injecting a transparent second plastic material into the second mold cavity; and a nontransparent first plastic material is injected into the first mold cavity to provide a nontransparent background for printing in the remainder of the side wall.

In another aspect of the method of the present invention, the step of shaping the first plastic material component (step (g)) may further include the step of providing a first complementary mold part that is dimensioned in relation to the first common mold part such that when combined with the first common mold part to assemble the first mold cavity, portions of the first complementary mold part contact portions of the first common mold part to rigidly secure the first common mold part in position in relation to the first complementary mold part in order to impede movement of the first common mold part in relation to the first complementary mold part during the injection of the first plastic material into the first mold cavity.

The present invention further provides apparatus for performing the method of the present invention and hollow, thin-walled plastic products molded according to the method of the present invention.

Additional features of the present invention are described in relation to the description of the preferred embodiments.

## BRIEF DESCRIPTION OF THE DRAWING

FIGS. 1A and 1B are sectional views illustrating a first mold cavity assembled by combining a first common mold part with a first complementary mold part. FIG. 1A is a top sectional view taken along lines A—A in FIG. 1B; and FIG. 1B is a side sectional view taken along lines B—B in FIG. 1A. FIGS. 1A and 1B further show the first plastic material injected into the first mold cavity.

FIGS. 2A and 2B are sectional views illustrating a second mold cavity assembled by combining the first common mold part of FIGS. 1A and 1B with a second complementary mold part. FIG. 2A is a top sectional view taken along lines A—A in FIG. 2B; and FIG. 2B is a side sectional view taken along lines B—B in FIG. 2A. FIGS. 2A and 2B further show the first plastic material component contained in the second mold cavity and the second plastic material injected into the second mold cavity.

FIGS. 3A through 3D illustrate a series of steps in the performance of a preferred embodiment of the method of the present invention.

FIG. 4 illustrates a first plastic material component formed in an alternative embodiment of the method of the present invention.

FIG. 5 is a sectional view illustrating a second mold cavity containing the first plastic material component of FIG. 4. FIG. 5 also is a sectional view illustrating a product molded according to such alternative embodiment of the method of the present invention.

FIG. 6 illustrates a first plastic material component formed in a further alternative embodiment of the method of the present invention.

FIG. 7 is a sectional view illustrating a second mold cavity containing the first plastic material component of FIG. 6. FIG. 7 also provides a sectional view of a product molded according to such further alternative embodiment of the method of the present invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring to FIGS. 1A and 1B the apparatus of a preferred embodiment of the present invention includes a first common mold part 10 and first complementary mold part 12. The first common mold part 10 is combined with the first complementary mold part 12 to assemble a first mold cavity 14. The first complementary mold part 12 is dimensioned in relation to the first common mold part 10 such that when so combined with the first common mold part 10 to assemble the first mold cavity 14, portions 16 of the first complementary mold part 12 contact portions 18 of the first common mold part 10 to rigidly secure the first common mold part 10 in position in relation to the first complementary mold part 12 in order to impede movement of the first common mold part 10 in relation to the first complementary mold part 12 during injection of the first plastic material 20 into the first mold cavity 14. The first plastic material 20 is injected into the mold cavity 14 through a gate 22 and a runner 24 in the first complementary mold part 12.

The injected first plastic material 20 is solidified to form a first plastic material component 26 by cooling the injected first plastic material in the first mold cavity 14, whereby the first plastic material component 26 is shaped in accordance with the dimensions of the first mold cavity 14. In an alternative embodiment, the first plastic material component may be further shaped following removal of the first complementary mold part 12.

Referring to FIGS. 2A and 2B the apparatus of a preferred embodiment of the present invention includes a second complementary mold part 26. The first common mold part 10 is combined with the second complementary mold part 26 to assemble a second mold cavity 28 with the first plastic material component 20 attached to the first common mold part 10, so that when the second mold cavity 28 is assembled, the first plastic material component 20 is contained within the second mold cavity 28.

The first plastic material component 20 is shaped such that when the first plastic material component 20 is so contained in the second mold cavity 28 the first plastic material component 20 provides one or more stabilizing regions 30 that rigidly secure the first common mold part 10 in position in relation to the second complementary mold part 26 in order to impede movement of the first common mold part 10 in relation to the second complementary mold part 26 during the insertion of a second plastic material 32 into the second mold cavity 28.

The second plastic material 32 is injected into the second mold cavity 28 through a gate 34 and a runner 36 in the second complementary mold part 26 while the first plastic material component 20 is contained in the second mold cavity 28.

The injected second plastic material 32 is solidified by cooling in the second mold cavity 28 so as to form a second plastic material component 32 that fuses with the first plastic material component 20 to produce thin-walled hollow plastic product 38 having controlled dimensions.

A preferred embodiment of a method of cyclic injection molding of hollow, thin-walled plastic products according to the present invention, utilizing two common mold parts and two complementary mold parts to provide four mold cavities is described with reference to FIGS. 3A through 3D.

Referring to FIG. 3A, a second common mold part 40 is combined with the first complementary mold part 12 to assemble a third mold cavity 42; while at the same time the first common mold part 10 is combined with the second complementary mold part 26 to assemble a second mold cavity 28, with the first plastic material component 18 attached to the first common mold part 10, so that when the second mold cavity 28 is assembled, the first plastic material component 20 is contained within the second mold cavity 28. The formation of the first plastic material component 20 is discussed above in relation to FIGS. 1A and 1B.

A third plastic material 44, which may be the same as the first plastic material 20, is injected into the third mold cavity 42 through the gate 22 and the runner system 24 contained in the first complementary mold part 12; while at the same time, the second plastic material 32 is injected into the second mold cavity 28 through the gate 34 and a runner system 36 contained in the second complementary mold part 26.

The injected third plastic material 44 is solidified by cooling in the third mold cavity 42 to form a third plastic material component 44; while at the same time the injected second plastic material 32 is solidified by cooling in the second mold cavity 28 so as to form the second plastic material component 28 that fuses with the first plastic material component 20 to produce the hollow, thin-walled plastic product 38.

Referring to FIG. 3B, the first common mold part 10 and the second common mold part 40 are separated from the second complementary mold part 26 and the first complementary mold part 12 respectively; and the molded hollow, thin-walled plastic product 38 is ejected from first common mold part 10, while the third plastic material component 44 is retained on the third common mold part 40. The positions of the first common mold part 10 and the second common mold part 40 are then interchanged from those shown in FIG. 3B to those shown in FIG. 3C.

Referring to FIG. 3C, the first common mold part 10 is combined with the first complementary mold part 12 to assemble the first mold cavity 14; while at the same time the second common mold part 40 is combined with the second complementary mold part 26 to assemble a fourth mold cavity 48, with the first plastic material component 44 attached to the third common mold part 40, so that when the fourth mold cavity 48 is assembled, the third plastic material component 44 is contained within the fourth mold cavity 48. The formation of the third plastic material component 44 is discussed above in relation to FIG. 3A.

The first plastic material 20, which may be the same as the third plastic material 44, is injected into the first mold cavity 14 through the gate 22 and the runner system 24 contained in the first complementary mold part 12; while at the same time, a fourth plastic material 50, which may be identical to the second plastic material 32, is injected into the fourth mold cavity 48 through the gate 34 and a runner system 36 contained in the second complementary mold part 26.

The injected first plastic material 20 is solidified by cooling in the first mold cavity 14 to form another first plastic material component 20; while at the same time the injected fourth plastic material 50 is solidified by cooling in the fourth mold cavity 48 so as to form the second plastic material component 48 that fuses with the third plastic material component 44 to produce a second hollow, thin-walled plastic product 52.

Referring to FIG. 3D, the first common mold part 10 and the second common mold part 40 are separated from the first complementary mold part 12 and the second complementary mold part 26 respectively; and the second molded hollow, thin-walled plastic product 52 is ejected from second common mold part 40, while the first plastic material component 20 is retained on the first common mold part 10. The positions of the first common mold part 10 and the second common mold part 40 are then interchanged from those shown in FIG. 3D to those shown in FIG. 3A, and the cycle is repeated.

As described above, the first plastic material component 20 is shaped such that when the first plastic material component 20 is contained in the second mold cavity 28, the first plastic material component 20 provides one or more stabilizing regions 30 that rigidly secure the first common mold part 10 in position in relation to the second complementary mold part 26 in order to impede movement of the first common mold part 10 in relation to the second complementary mold part 26 during injection of the second plastic material 32 into the second mold cavity 28.

Likewise, the third plastic material component 44 is shaped such that when the third plastic material component 44 is contained in the fourth mold cavity 48, the third plastic material component 44 provides one or more stabilizing regions that rigidly secure the second common mold part 40 in position in relation to the second complementary mold part 26 in order to impede

FW 010

movement of the second common mold part 40 in relation to the second complementary mold part 26 during injection of the fourth plastic material 50 into the fourth mold cavity 48.

The method described above with reference to FIGS. 3A through 3D may be used for producing hollow, thin-walled plastic products having laminated walls of different plastic materials. In performing such method, the first plastic material 20 is injected until it reaches a parting line 54 between the first common mold part 10 and the first complementary mold part 12 (FIG. 3C); and the second plastic material 32 is injected until it reaches a parting line 56 between the first common mold part 10 and the second complementary mold part 26 (FIG. 3A). Likewise, the third plastic material 44 is injected until it reaches a parting line 58 between the second common mold part 40 and the first complementary mold part (FIG. 3A); and the fourth plastic material 50 is injected until it reaches a parting line 60 between the second common mold part 40 and the second complementary mold part 26.

Referring to FIGS. 4 and 5, the method of the present invention also may be used for molding a product 62 having a side wall 64 including at least one approximately longitudinal strip that may be transparent to thereby provide a transparent window in the side wall 64.

In one embodiment, the first plastic material component 66 is shaped to provide at least one stabilizing region 68 that is transverse to a parting line 54 (FIG. 3C) between the first common mold part 10 and the first complementary mold part 12, whereby such longitudinal strip is defined by a transverse stabilizing region 68. The stabilizing regions 68 need not extend all the way to the parting line 54. A transparent window is provided in the side wall 64 by injecting a transparent first plastic material into the first mold cavity to provide the first plastic material component 66. A nontransparent second plastic material 72 is injected into the second mold cavity 74 to provide a nontransparent background for printing in the remainder of the side wall 64.

In an alternative embodiment, the first plastic material component 66 is shaped such that when the first plastic material component 66 is contained in the second mold cavity 74, the second mold cavity 74 defines at least one unfilled cavity region 72 that is transverse to a parting line 56 (FIG. 3A) between the first common mold part 10 and the second complementary mold part 26, whereby longitudinal strips may be provided in the unfilled transverse cavity regions 72. The unfilled transverse cavity regions 72 need not extend all the way to the parting line 56. In this embodiment, transparent windows are defined in the side wall 64 by injecting a transparent second plastic material into the second mold cavity 74 to fill the transverse cavity regions 72. Prior thereto, a nontransparent first plastic material is injected into the first mold cavity to form the first plastic material component 66 and thereby provide a nontransparent background for printing in the remainder of the side wall 64.

Referring to FIGS. 6 and 7, in a further preferred embodiment, the first plastic material component 82 that is shaped as shown in FIG. 6 to include a plurality of symmetrically disposed stabilizing regions 84, which extend approximately longitudinally over a portion of the side wall 86 of the molded product 88. The first plastic material component 82 is molded in a first mold cavity in accordance with the teaching of applicant's U.S. Pat. application No. 7,463, filed Jan. 26, 1987 and in accordance of the above description to the extent that such description is compatible with the teaching of application Ser. No. 7,463. After the first plastic material component 82 is formed in a first mold cavity, which is assembled by combining a first complementary mold part 12 and a first common mold part 10, the first plastic component 82 is retained on the first common mold part 10 while the first common mold part 10 is combined with a second complementary mold part 26 to assemble a second mold cavity 90, as shown in FIG. 7.

Referring to FIG. 7, the first plastic material component 82 is shaped such that when the first plastic material component 82 is contained in the second mold cavity 90, the first plastic material component 82 provides one or more stabilizing regions 84 that rigidly secure the first common mold part 10 in position in relation to the second complementary mold part 26 in order to impede movement of the first common mold part 10 in relation to the second complementary mold part 26 during injection of the second plastic material 92 into the second mold cavity 90.

The injected second plastic material 92 is solidified by cooling in the second mold cavity 90 to form a second plastic material component 92 that fuses with the first plastic material component 82 to produce the hollow, thin-walled, plastic product 88. The side wall 86 of the molded product 88 thus includes two layers of plastic 82, 92. The molded product 88 has controlled dimensions, is generally shaped as shown in FIG. 6, and has a lateral cross section as shown in FIG. 7. The side wall 86 of the molded product thus includes two layers of plastic 82, 92.

The stabilizing regions 84 have a wall thickness equal to the thickness of the side wall 86 and are transverse to the parting line 56 (FIG. 3A) between the first common mold part 10 and the second complementary mold part 26 to thereby provide longitudinal transparent windows 84 in the side wall 86. The stabilizing regions 84 need not extend all the way to the parting line 56. In a preferred embodiment of this product, the other side-wall layer 90 is nontransparent and extends throughout the majority of the side wall 86.

The present invention may be modified from the embodiments illustrated and described above. The common mold parts may be cavity mold parts instead of core mold parts, as illustrated and described herein. In addition, injections of plastic material into any given mold cavity may be made through more than one gate. Also, injections of plastic materials may be made into more than two mold cavities simultaneously, whereby the number of mold cavities included in the mold may be a multiple of the number of separate mold cavities required to produce a single product. For example, when using the method described and illustrated herein for producing a product composed of two plastic material components formed following injection of plastic material into two separate mold cavities, the number of mold cavities included in the mold may be any multiple of two, i.e. 2, 4, 6, etc.

The present invention also can be used to mold products including more than two plastic material components formed following injection of plastic material into more than two separate mold cavities. In an embodiment requiring three separate mold cavities, a third complementary mold part is used, and the fused first and second plastic material components are retained on

FW 011

the first common mold part when the first common mold part is combined with the third complementary mold part to assemble the third mold cavity, with the fused first and second mold parts being shaped to stabilize the common mold in relation to the third complementary mold part during injection of a third plastic material into the third mold cavity.

The core-stabilization techniques described in applicant's U.S. Pat. Nos. 4,381,275 and 4,508,676; U.S. Pat. No. 3,737,272 to Segmuller; and in Australian Patent Specification 17,577/70 filed by Ryles and published Jan. 20, 1972 may be used to stabilize the common mold part in relation to the first complementary mold part during the injection of the first plastic material in lieu of the technique described above with relation to FIGS. 1A and 1B.

The first and second plastic materials may be either the same material or different materials. It is sometimes advantageous to use first and second plastic materials having different physical characteristics. For example, the present invention is ideally suited for molding a hollow, thin-walled plastic product in which the side wall must provide both a moisture barrier and a gas (such as Oxygen) barrier. To mold such a product, a plastic material having a desirable moisture-barrier characteristic is selected as one of the injected plastic materials and a plastic material having a desirable gas-barrier characteristic is selected as the other injected plastic material.

I claim:

1. A method of cyclic injection molding a thin-walled hollow, plastic product having a closed end and an open end with laminated walls terminating in a rim at the open end, utilizing a first mold cavity and a second mold cavity, the first mold cavity being defined by a first common mold part and a first complementary mold part, and the second mold cavity being defined by the first common mold part and a second complementary mold part, the method comprising the steps of

(a) combining the first common mold part with the first complementary mold part to assemble the first mold cavity;

(b) injecting a first plastic material into the first mold cavity;

(c) solidifying the injected first plastic material to form a first plastic material component;

(d) combining the first common mold part with the second complementary mold part to assemble the second mold cavity with the first plastic material component attached to the first common mold part so that when the second mold cavity is assembled the first plastic material component is contained within the second mold cavity;

(e) injecting a second plastic material having different characteristics than the first plastic material into the second mold cavity while the first plastic material component is contained therein; and

(f) solidifying the injected second plastic material so as to form a second plastic material component that fuses with the first plastic material component to produce a hollow plastic product;

wherein step (c) comprises the step of

(g) shaping the first plastic material component such that when the first plastic material component is so contained in the second mold cavity the first plastic material component provides one or more stabilizing regions that rigidly secure the first common mold part in position in relation to the second complementary mold part in order to impede movement of the first common mold part in relation to the second complementary mold part during step (e), to thereby produce a thin-walled plastic product having controlled dimensions;

wherein step (b) comprises the step of

(h) injecting the first plastic material until it reaches the portion of the first mold cavity that defines the rim of the product; and

wherein step (e) comprises the step of

(i) injecting the second plastic material until it reaches the portion of the second mold cavity that defines the rim of the product.

2. A method according to claim 1 for molding a product having a side wall including an approximately longitudinal strip, wherein step (g) comprises shaping the first plastic material component to provide at least one said stabilizing region that is transverse to a parting line, between the first common mold part and the first complementary mold part, whereby said longitudinal strip is defined by said transverse stabilizing region.

3. A method according to claim 2,

wherein step (b) comprises injecting a said first plastic material that is transparent, whereby said strip defines a transparent window in the side wall; and

wherein step (e) comprises injecting a said second plastic material that is nontransparent.

4. A method according to claim 1 for molding a product having a side wall including an approximately longitudinal strip, wherein step (g) comprises shaping the first plastic material component such that when the first plastic material component is contained in the second mold cavity, the second mold cavity defines at least one unfilled cavity region that is transverse to a parting line between the first common mold part and the second complementary mold part, whereby said longitudinal strip is defined by said unfilled transverse cavity region.

5. A method according to claim 4,

wherein step (b) comprises injecting a said first plastic material that is nontransparent; and

wherein step (e) comprises injecting a said second plastic material that is transparent, whereby said strip defines a transparent window in the side wall.

6. A method according to claim 1, for cyclic injection molding a plurality of thin-walled, hollow, plastic products, further utilizing a third mold cavity and a fourth mold cavity, the third mold cavity being defined by a second common mold part and the first complementary mold part, and the fourth mold cavity being defined by the second common mold part and the second complementary mold part, the method further comprising the steps of:

(h) during step (d), combining the second common mold part with the first complementary mold part to assemble the third mold cavity;

(i) during step (e), injecting a third plastic material into the third mold cavity;

(j) during step (f), solidifying the injected third plastic material to form a third plastic material component;

(k) during step (a), combining the second common mold part with the second complementary mold part to assemble the fourth mold cavity with the third plastic material attached to the second common mold part so that when the fourth mold cavity is assembled the third plastic material is contained within the fourth mold cavity;

FW 012

(l) during step (b), injecting the fourth plastic material into the fourth mold cavity while the solidified third plastic material is contained therein; and

(m) during step (c), solidifying the injected fourth plastic material so as to form a fourth plastic material component that fuses with the third plastic material to produce a second hollow plastic product;

wherein step (j) comprises the step of

(n) shaping the third plastic material component such that when the third plastic material component is so contained in the fourth mold cavity the third plastic material component provides one or more stabilizing regions that rigidly secure the second common mold part in position in relation to the second complementary mold part in order to impede movement of the second common mold part in relation to the second complementary mold part during step (l), to thereby produce a second thin-walled plastic product having controlled dimensions.

7. A method according to claim 6, for producing said products having laminated walls,

wherein step (b) comprises the step of

(o) injecting the first plastic material until it reaches the parting line between the first common mold part and the first complementary mold part;

wherein step (e) comprises the step of

(p) injecting the second plastic material until it reaches the parting line between the first common mold part and the second complementary mold part;

wherein step (i) comprises the step of

(q) injecting the third plastic material until it reaches the parting line between the second common mold part and the first complementary mold part; and

wherein step (l) comprises the step of

(r) injecting the fourth plastic material until it reaches the parting line between the second common mold part and the second complementary mold part.

8. A method according to claim 6, wherein the first plastic material is the same as the third plastic material and the second plastic material is the same as the fourth plastic material.

9. A method according to claim 1, wherein step (d) further comprises providing a said first complementary mold part that is dimensioned in relation to the first common mold part such that when so combined with the first common mold part to assemble the first mold cavity, portions of the first complementary mold part contact portions of the first common mold part to rigidly secure the first common mold part in position in relation to the first complementary mold part in order to impede movement of the first common mold part in relation to the first complementary mold part during step (b).

10. A method according to claim 1, further comprising the step of

(f) between steps (c) and (d), separating said first common mold part with the first plastic material component attached thereto from said first complementary mold part without dividing that portion of said first complementary mold part that defines the rim of the product.

* * * * *

FW 013

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 145094 - BH

December 04, 2007
16:31:05

Civ Fil Non-Pris
USAO #.: 07CV2277 CIVIL FILING
Judge..: JOHN A HOUSTON
Amount.: $350.00 CK
Check#.: BC# 1243

Total-> $350.00

FROM: SORENSEN V. ESSEPLAST
CIVIL FILING

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jens Erik Sorensen, as Trustee of Sorensen Research and Development Trust

(b) County of Residence of First Listed Plaintiff San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Melody A. Kramer, Kramer Law Office, Inc.
9930 Mesa Rim Rd #1600, San Diego, CA 92121, 858-362-3150

## DEFENDANTS

Esseplast (USA) NC, Inc. '07 CV 2277 JAH (BLM)

FILED 07 DEC -4 PM 4:30

County of Residence of First Listed Defendant Mecklenburg, NC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

Attorneys (If Known)

BY: DEPUTY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☒ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 USC 271

Brief description of cause:
Patent infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Acc to Proof

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE (see Notice of Related cases) DOCKET NUMBER

DATE 12/4/07 SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 145094 AMOUNT $350 12/4/07 BH APPLYING IFP JUDGE MAG. JUDGE

ORIGINAL

FILED

07 DEC -4 PM 4:32

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

**MELODY A. KRAMER**, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

**J. MICHAEL KALER**, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

Attorneys for Plaintiff JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ESSEPLAST (USA) NC, INC., a Delaware corporation, and DOES 1-100,<br><br>Defendants. | Case No. '07 CV 2277 JAH (BLM)<br><br>**NOTICE OF RELATED CASES** |

//

//

Pursuant to Local Civil Rule 40.1(e), Plaintiff JENS E. SORENSEN, as TRUSTEE OF THE SORENSEN RESEARCH AND DEVELOPMENT TRUST ("SRDT"), hereby gives notice of pending cases related to the present case. Specifically, SRD TRUST gives notice of the following related cases that all arise from alleged infringement of United States Patent Number 4,935,184 ("the '184 patent"), whether pending, dismissed, or otherwise terminated:

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Giant International, Inc., et al*, Case No. 07-CV-2121, filed November 6, 2007 in the United States District Court for the Southern District of California. Consolidation is not recommended because this related case involves different parties and has different, unrelated products at issue.

*Jens Erik Sorensen as Trustee of Sorensen Research and Development Trust v. Helen of Troy Texas Corporation, et al*, Case No. not assigned, being filed concurrently in this District. Consolidation is not recommended because this related case involves different parties and has different, unrelated products at issue.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. First International Digital, Inc., et al*, Case No. C075525, filed October 30, 2007 in the United States District Court for the Northern District of California. Consolidation is not recommended because this related case involves different parties and has different, unrelated products at issue.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. Digital Networks North America, Inc., et al*, Case No. C075568, filed November 1, 2007 in the United States District Court for the Northern District of California. Consolidation is not recommended because this related case involves

different parties and has different, unrelated products at issue.

*Jens Erik Sorensen as Trustee of the Sorensen Research and Development Trust v. The Black & Decker Corporation, et al,* Civil Case No.: 06CV1572BTN CAB, filed August 7, 2006, in the United States District Court for the Southern District of California. Consolidation is not recommended because this related case involves different parties and has different, unrelated products at issue.

*American Safety Razor Co. v. Sorensen Research & Development Trust,* Civil Case No. 07CV00730HHK, filed April 20, 2007, in the United States District Court for the District of Columbia. Consolidation is not recommended because this related case involves different parties and has different, unrelated products at issue.

*DMS Holdings, Inc. v. Sorensen Research & Development Trust.* Civil Case No.: 07CV02690, filed May 11, 2007, in the United States District Court for the Northern District of Illinois. Consolidation is not recommended because this related case involves different parties and has different, unrelated products at issue.

*Jens Erik Sorensen as Trustee of the Sorensen Research And Development Trust v. Tecnica USA, Inc and Nordica USA, Inc.,* Civil Case No. 06CV1941 B MLS, filed September 18, 2006 in the Southern District of California. The action was settled by the parties, and dismissed.

*Jens Erik Sorensen As Trustee of The Sorensen Research And Development Trust v. Head USA Inc.* Civil Case No.: 06CV1434BTN CAB, filed July 2006 in the Federal District for the Southern District of California. The action was settled by the parties, and dismissed.

*Head USA Inc. v. Jens Erik Sorensen (As Trustee of The Sorensen Research And Development Trust), and Sorensen Research And Development Trust.* Docket No.: 306CV00983, filed June 2006 in the Federal District of Connecticut. The matter was transferred and consolidated with the *Sorensen Research And Development Trust v. Head USA Inc.* action filed in the Southern District of California, Civil Case No.: 06CV1434BTM CAB. The action was later settled by the parties, and dismissed.

*Nordica USA Corp. v. Jens Ole Sorensen, Jens Erik Sorensen, and Sorensen Research and Development Trust.* Docket No. 1:06-cv-91-JM filed March 8, 2006 in the Federal District of New Hampshire. The matter was transferred and consolidated with *Jens Erik Sorensen As Trustee of The Sorensen Research And Development Trust v. Tecnica USA, Inc and Nordica USA, Inc.*, Civil Case No. 06CV1941 B MLS, filed in the Southern District of California. The action was later settled by the parties.

*Jens Ole Sorensen, and Jens E. Sorensen, as Trustee Of The Sorensen Research and Development Trust v. DaimlerChrysler AG, and Mercedes-Benz USA, LLC.* Civil No. 03-1763 (HAA) filed in the United States District Court for Northern California and transferred to the United States District Court for New Jersey. This matter has been settled and dismissed.

*In the Matter of Certain Automobile Tail Light Lenses And Products Incorporating Same.* Investigation No. 337-TA-502 filed in the United States International Trade Commission. The matter was remanded after appeal to the Federal Circuit Court of Appeals, then settled and dismissed.

*Jens E. Sorensen, as Trustee Of The Sorensen Research and Development*

*Trust v. Premier Automotive Group, Ford Motor Company, and Jaguar, Ltd.* Case No. 03-cv-01107, filed March 14, 2003 in the Federal Court for the Northern District of California. The matter was settled and dismissed.

*Lowe's Companies, Inc., et al v. Sorensen Research and Development Trust.* Case No. 05-cv-00234 filed July 29, 2005 in the Federal Court for the Western District of North Carolina. The matter was never served and was dismissed.

*Digital Innovations LLC v. Sorensen Research and Development Trust.* Case No. 05-cv-06428, filed November 9, 2005 in the Federal Court for the Northern District of Illinois. The matter was never served and was dismissed.

*Big Lots v. Sorensen Research and Development Trust.* Case No. 2:06-cv-1089, filed December 29, 2006 in the Federal Court for the Southern District of Ohio. The matter was never served and was dismissed.

*Bon-Aire v. Sorensen Research and Development Trust.* Case No. 07-cv-054-S, filed January 2007 in the Federal Court for the District of Idaho. The matter was never served and was dismissed.

*Husqvarna Outdoor Products, Inc. v. Sorensen Research and Development Trust.* CIV. NO. CV106-160 in the Federal Court for the Southern District of Georgia on October 30, 2006. The matter was never served and was dismissed.

*Sorensen et al v. International Trade Commission et al.* 427 F.3d 1375 (Fed.Cir., 2005). After the Federal Circuit ruled in patentee's favor, the parties settled and dismissed.

DATED this 4th day of December, 2007.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT TRUST, Plaintiff

/s/ Melody A. Kramer

Melody A. Kramer, Esq.
J. Michael Kaler, Esq.
Attorneys for Plaintiff

# EXHIBIT F

**Kramer Law Office, Inc.**
9930 Mesa Rim Rd., Ste. 1600
San Diego, California 92121
Phone 858/362-3150
Fax 858/824-9073

**Melody A. Kramer, Esq.**
mak@kramerlawip.com

VIA FAX 650-687-1182

June 5, 2008

Alan A. Limbach
DLA Piper USA LLC
2000 University Avenue
East Palo Alto, CA 94303-2214
Facsimile: (650) 833-2001

RE: Sorensen Research & Development Trust v. Esseplast USA (NC) Inc.
Case No. 07cv2277 JAH BLM

Dear Mr. Limbach:

In doing my usual review of case files I noted, again, that Esseplast has repeatedly represented to us that sales of the Accused Products are minimal. If that is indeed the case, and if Esseplast is willing to verify its sales volumes, this matter can be easily and economically resolved. Further time in litigation will only encourage my client to continue to look for products that may infringe; delay has already expanded this matter from one product to three.

Please talk with your client about their intentions regarding pursuit of litigation. If they are willing to resolve this now, I will get specific settlement authority from my client and we can wrap up the details.

Sincerely,

Melody A. Kramer

**PROOF OF SERVICE**

I hereby certify that on August 6, 2008, I caused the foregoing DEFENDANT ESSEPLAST USA (NC), INC.'S OPPOSITION TO SORENSON'S MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

*Attorneys for Plaintiff*

J. Michael Kaler (158296)
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, CA 92121
Phone: (858) 362-3151
Fax: (858) 824-9073
michael@kalerlaw.com

Melody A. Kramer (169984)
KRAMER LAW OFFICE
9930 Mesa Rim Road, Suite 1600
San Diego, CA 92121
Phone: (858) 362-3150
Fax: (858) 824-9073
mak@kramerlawip.com

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Erik R. Fuehrer
Attorneys for Esseplast USA (NC), Inc.