MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

Attorneys for Plaintiff JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br>v.<br><br>ESSEPLAST (USA) NC, INC., a Delaware corporation, and DOES 1-100,<br><br>Defendants.<br>_______________________________<br><br>and related counterclaims. | Case No. 07cv02277 BTM CAB<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**<br><br>Date: August 20, 2008<br>Time: 11:30 a.m.<br>Courtroom 15 – 5th Floor<br>The Hon. Barry T. Moskowitz<br><br>***Oral Argument Has Been Respectfully Requested by Plaintiff*** |

## SUMMARY OF REPLY

Defendant Esseplast claims it has offered to provide Plaintiff with access to the molds for the accused products, yet is fiercely opposing a simple request for identification of manufacturers. Such a waste of time should not be sanctioned.

Plaintiff holds a valid, enforceable U.S. process patent and, until the Court allows the filing of a 35 U.S.C. § 295 motion in this case, has the evidentiary burden of proving infringement of that process patent by Defendant.

Meanwhile, Defendant hides behind a stay of indefinite duration and maintains sole access to all manufacturing information, asserting via hearsay upon hearsay statements that sufficient steps are being taken to preserve evidence in this case. Such assertions that foreign non-parties will preserve evidence are as “hollow” as those made by Black & Decker’s attorney in the *Sorensen v. Black & Decker* motion hearing for similar evidence preservation.

Defendant Esseplast is the proverbial “fox guarding the hen house,” having zero incentive to ensure that evidence of the actual manufacturing process at issue in this case is actually being preserved pending stay, especially any evidence that tends to demonstrate infringement. Thus, the Court should allow Plaintiff to take the requested reasonable steps to ensure access and preservation, or shift the burden of proof to Esseplast to properly motivate evidence preservation.

## ARGUMENT

### I. SETTLEMENT ASSERTIONS ARE NOT A SUBSTITUTE FOR EVIDENCE.

Statements made by an infringement defendant during settlement negotiations are not admissible evidence to prove liability or to impeach through prior inconsistent statements. *Fed.R.Evid.* Rule 408(a). Esseplast’s assurances that it has provided Plaintiff with hearsay upon hearsay information about the manufacturing process during settlement discussions is hollow and meaningless.

Mr. Limbach's declaration, while inadmissible as evidence (see separate Evidentiary Objections), also demonstrates the evidentiary dilemma in this case. Esseplast seeks to try this case via unexamined, unverified, hearsay statements and opinions from around the globe, whereas Plaintiff is unsurprisingly insisting on actual, admissible evidence.

Mr. Limbach's explanation of the process of only one of three accused products during a settlement communication amounted to little more than his uninformed impression that the process did not use a common mold part. *Kramer Decl.* #2 ¶ 4. However, without actually seeing the molds, comparing them with the parts, and examining the source of Mr. Limbach information, there is no way for Plaintiff to cross-check the information and reach its own conclusion as to the truth or veracity of those statements. *Kramer Decl. #2* ¶ 5. Mr. Limbach did not identify any contact information for this person that he supposedly talked to, did not identify what company he worked for, did not identify what third-party vendor in China he supposedly talked with, and did not identify or provide any documents reviewed. Furthermore, the entire conversation was protected under Fed.R.Evid. Rule 408. *Kramer Decl. #2* ¶ 6. Nothing about this conversation could ever be offered as evidence of the manufacturing process in this case.

Mr. Limbach did not offer to provide Plaintiff with access to molds. Mr. Limbach has previously claimed in a letter to Ms. Kramer that such an offer was made, and I responded by letter correcting the error. *Kramer Decl. #2* ¶ 7.

Mr. Limbach made no representations as to the Clorox manufacturing process, but provided an unexplained opinion that the process did not infringe. *Kramer Decl. #2* ¶ 8. To clarify, these two products were inadvertently not specifically identified within the Complaint, but due to the litigation stay, have not been formally added in any pleadings. However, Esseplast is fully aware that they are included within the general descriptive language of the Complaint. *Kramer Decl. #2* ¶ 9. Contrary to Mr. Limbach's claim that Plaintiff has not provided Esseplast with any basis to

believe that the Clorox products infringe, Plaintiff's counsel, Mr. Kaler, sent Esseplast an infringement notice dated September 12, 2006 identifying those products, and enclosing drawings, claim charts, and a copy of the '184 patent. Furthermore, by letter dated January 10, 2008, Ms. Kramer advised Mr. Limbach of these additional products. *Kramer Decl. #2* ¶ 10.

Plaintiff has no identification of the location or holder of the manufacturing process information of the accused processes, and Esseplast's unsubstantiated settlement discussions do not change that fact.

## II. PARTY ASSURANCES THAT NON-PARTIES WILL PRESERVE EVIDENCE ARE INSUFFICIENT.

In the related *Sorensen v. Black & Decker* case, the Court did not find non-party assurances of preservation of evidence to be sufficient to resolve concerns about loss of manufacturing process information in a similar evidence motion.

During the June 3, 2008 hearing in that case, Mr. Niro, the attorney for the third-party manufacturer and also for the Black & Decker defendants, made assurances to the Court that the third-party manufacturer knew about the lawsuit and would advise the Court and Plaintiff if evidence was about to be destroyed. The Court did not find the assurance persuasive.

> MR. NIRO [attorney for third-party manufacturer]: . . . if an issue comes up, where if they are scheduling to destroy this plant or destroy some molds, we will certainly notify the court and notify plaintiff and at that time they can inspect.
>
> THE COURT: What obligation -- if I have no jurisdiction over them, what can I do to them?
>
> MR. NIRO: I don't think anything, Judge.
>
> THE COURT: Right. So that's kind of a hollow offer.

*Transcript of the June 3, 2008 hearing*, page 22:14-24 (see attached). The Court proceeded to grant Plaintiff's request for exception to stay to issue process to inspect the plant.

Esseplast's description of steps taken to ensure preservation of evidence are even more hollow.

Mr. Fuehrer's declaration's offers of hearsay representations of what non-party, non-client, foreign citizens supposedly have done to preserve evidence is not only legally inadmissible (see separate Evidentiary Objection), but is also meaningless. Mr. Fuehrer's claim that a certain person at his client's parent company sent electronic communications to employees, the contents of which he supposedly summarizes, has no evidentiary meaning. Likewise meaningless is the claim that another person in Hong Kong delivered a letter to an unidentified third party manufacturer.

**III. ABSENT IDENTIFICATION OF THIRD-PARTIES WHO POSSESS MANUFACTURING PROCESS INFORMATION, PLAINTIFF HAS NO ASSURANCE OF PRESERVATION OF NECESSARY EVIDENCE.**

Plaintiff is in danger of losing valuable and necessary evidence because Esseplast is unwilling to identify the non-party entities who hold relevant evidence vital to this patent infringement case. While some penalty can attach to Defendant's failure to preserve evidence within its control, there is little that a Court can do if a third party loses evidence. Application of the 35 U.S.C. § 295 presumption of infringement, however, seems to be the only remedy that would be available to level the playing field between the parties.

It is the evidence that is outside of the direct control of the Defendant that forms the subject of this motion. Plaintiff has sought the identification and location of the manufacturers and suppliers and permission to make efforts to obtain manufacturing information from them. Neither the Court nor Plaintiff can request, much less compel, any production or preservation of evidence without Defendant's

identification of these non-parties.

In *Sorensen v. Black & Decker*, Case No. 06cv1572, this Court allowed limited discovery to permit plant inspections of a third-party Missouri manufacturer because

> [The manufacturers] are not a party. They are really under no obligation to keep the molds and store the molds at their expense, and I think the examination of the molds is appropriate . . . the only way to do it is to allow you to apply for a Rule 45 and Rule 34 subpoena.

Court's statements from the Transcript of June 3, 2008 hearing in *Sorensen v. Black & Decker Corporation, et al*, Case No. 06cv1572 (page 23 attached hereto).

Likewise in this case, it is unknown whether these unidentified non-parties are still manufacturing the Accused Products, or when such manufacture will cease. The Products may go out of production and molds and technical documents could be destroyed before the stay is lifted.

The inherent problem in not granting the relief requested is that during the pendency of a stay of undetermined duration, the parties with actual access to manufacturing process information are either outside of the jurisdiction of this Court and/or have no incentive to preserve evidence. This is the very problem that prompted the creation of the 35 U.S.C. § 295 presumption of infringement.

## IV. THE 35 U.S.C. § 295 PRESUMPTION OF INFRINGEMENT WOULD PROVIDE PARTIES WITH CONTROL OVER EVIDENCE THE INCENTIVE TO PRESERVE IT.

The 35 U.S.C. § 295 presumption of infringement is intended to address the difficulty of proof that the patented process was used when the party with the best control of the evidence has no incentive to provide it to the other party. 35 U.S.C. § 295 was passed to help U.S. patent holders deal with the increasing number of foreign manufactures importing infringing products into the United States, and the difficulty in obtaining discovery of manufacturing processes from such foreign

manufacturers:

> This presumption addresses a great difficulty a patentee may have in proving that the patented process was actually used in the manufacture of the product in question in those cases, where the manufacturer is not subject to discovery under the Federal Rules of Civil Procedure. For example, patent owners will frequently be unable to obtain information concerning the nature of processes being practiced by foreign manufacturers. Shifting the presumption should create no substantial burden, as an accused infringer should be in a much better position to establish that the product was made by another method.

*House Committee on the Judiciary, Process Patents Amendments Act of 1987*, H.R. REP. NO. 100-60, at 16 (1987).

The intent of Section 295 is to place the burden of proving/disproving infringement <u>on the party in the best position to offer the proof</u>. In most cases, the importer who, by reason of their relationship with the manufacturer, is in the best position to get process information:

> Importers, for example, because of their relationships with foreign manufacturers, may be able to exert pressure on such manufacturers to produce the necessary information. Users and sellers who purchase possibly infringing articles from importers may be able to exert similar pressure on those importers, who would in turn influence foreign manufacturers.

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83, at 57 (1987).

With this in mind, the legislature intended the threshold for the burden shifting to be less than that of requiring the patent holder to submit letters rogatory:

> A reasonable effort requirement could easily be satisfied in the United States through our discovery procedures. For a foreign manufacturer the patentee would have to take some reasonable step, such as writing to the manufacturer, to determine how the product was made and to have been unsuccessful in this regard. The reasonableness of the effort

> would depend on the facts of the case but should generally avoid the need for such measures as letters rogatory or suits in a foreign country.

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83, at 45 (1987).

The legislative history is abundant that the very purpose of section 295 is to lift from the shoulders of patent holders the undue burden of being forced to pursue discovery options outside the Federal Rules against foreign manufactures in foreign countries.

Because of the stay, no request for invoking the 35 U.S.C. § 295 presumption of infringement has yet been filed. However, the purpose of section 295 is directly relevant to this preservation of evidence motion.

To avoid undue prejudice to the Plaintiff, this Court should either allow the narrow, limited discovery that is being sought, or entertain a 35 U.S.C. § 295 motion that would assign the burden of proof of infringement to the parties that are in the best position to obtain and preserve manufacturing process information.

## V. THE COURT DID NOT PREVIOUSLY REJECT PLAINTIFF'S CONCERN REGARDING PRESERVATION OF EVIDENCE RAISED IN OPPOSITION TO THE MOTION FOR STAY.

Contrary to Defendant's assertion, the Court did not reject plaintiff's earlier arguments regarding loss of relevant evidence in granting a motion for stay. The Order for Stay explicitly allows for motions for exception to stay for preservation of evidence "in order to preserve evidence that will otherwise be unavailable after the stay." *Order Granting Defendants' Motion for Stay Pend. Reexam.*, Dkt. 31, 1:26-28.

Defendant's assertion that Plaintiff is required to provide more specific reasons regarding possible loss of evidence than are possible to be made without access to any discovery is absurd. Defendant seeks to blindfold Plaintiff and require

Plaintiff to describe and analyze things unseen.

Defendant has acknowledged the difficulty in getting process information from the foreign third party manufacturers, and claimed to have obtained manufacturing process information for three accused products. However, Defendant's source is second- or third-hand hearsay from individuals in Italy and China. Further, only a partial summary has been provided to Plaintiff or the Court.

Defendant claims that it has offered to share manufacturing information with Plaintiff. That is false. Defendant has not done provided such information, and its vigorous opposition here demonstrates either unwillingness or inability to share such information.

## CONCLUSION

Plaintiff has requested a narrow category of identification(s) and leave of the Court to pursue any available procedural remedies to ensure preservation of evidence that is outside of the possession, custody, or control of the parties to this case and/or outside of the jurisdiction of this Court.

In the alternative, if the Court is unwilling to grant this narrow discovery, the Court should grant leave to Plaintiff to file a 35 U.S.C. § 295 motion to switch the burden of proof of infringement/non-infringement to Defendant, thereby leaving with Defendant both the obligation and incentive to ensure that manufacturing process information is preserved for trial.

By placing the burden with the party with superior access to such information, the playing field will be leveled during the pendency of stay.

DATED this Wednesday, August 13, 2008.

JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT
TRUST, Plaintiff

/s/ Melody A. Kramer

Melody A. Kramer, Esq.
J. Michael Kaler
Attorney for Plaintiff

# PROOF OF SERVICE

I, Melody A. Kramer, declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121.

On Wednesday, August 13, 2008, I served the following documents:

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**

**DECLARATION OF MELODY A. KRAMER #2 IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**

**PLAINTIFF'S EVIDENTIARY OBJECTIONS TO DECLARATIONS OF MR. FUEHRER AND MR. LIMBACH FILED IN SUPPORT OF MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Alan A. Limbach<br>Gregory J. Lundell<br>Elizabeth Day<br>Vincent S. Lam<br>Erik R. Fuehrer<br>DLA Piper USA LLC<br>2000 University Avenue<br>East Palo Alto, CA 94303-2214<br>alan.limbach@dlapiper.com<br>greg.lundell@dlapiper.com<br>elizabeth.day@dlapiper.com<br>vincent.lam@dlapiper.com<br>erik.fuehrer@dlapiper.com | Esseplast (USA) NC, Inc. | Email--Pleadings Filed with the Court via CM/ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

I declare that the foregoing is true and correct, and that this declaration was executed on Wednesday, August 13, 2008, in San Diego, California.

/s/ Melody A. Kramer

Melody A. Kramer

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JENS ERIK SORENSEN, et al., )
)
Plaintiff, ) Case No. 06CV01572BTM
)
)
vs. )
)
THE BLACK & DECKER )
CORPORATION, a Maryland )
corporation,

Defendants.
) San Diego, California
)
) June 3, 2008
)
) 9:309 a.m.
)

Motion Hearing

BEFORE THE HONORABLE BARRY TED MOSKOWITZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

*For the Plaintiff*: Kaler Law Offices
J. Michael Kaler
9930 Mesa Rim Road St. 200
San Diego, CA 92121

Kramer Law Office
Melody A. Kramer
9930 Mesa Rim Road, St.1600
San Diego, CA 92121

*For the Defendants*: Niro, Scavone, Haller & Niro
Raymond P. Niro, Jr.
181 West Madison Street,
Suite 4600
Chicago, IL 60602

THE COURT: Unless, if you represent them, there is a consent, you know, a consent to jurisdiction of this court to enter the order allowing for it.

MR. NIRO: I don't think they have consented to jurisdiction here. Just in response to the letter from plaintiff to Revere Plastics, they retained our services. I know Ms. Goddard -- 10:10:15

THE COURT: Normally when you want to get discovery from a nonparty that is out of district you have to go to the court in that district. 10:10:30

MR. NIRO: I think that would still apply here.

THE COURT: Except if they consent to jurisdiction in the court where the underlying case is pending.

MR. NIRO: I haven't talked to Revere Plastics about that, but I would be surprised if they consented to that. But, again, if an issue comes up, where if they are scheduling to destroy this plant or destroy some molds, we will certainly notify the court and notify plaintiff and at that time they can inspect. 10:10:46

THE COURT: What obligation -- if I have no jurisdiction over them, what can I do to them? 10:10:59

MR. NIRO: I don't think anything, Judge.

THE COURT: Right. So that's kind of a hollow offer.

MR. NIRO: If there is no jurisdiction then there 10:11:16

is no -- then there is nothing that we are talking about
today.
THE COURT: If they go to Missouri and they get an
order there, then there would be jurisdiction in Missouri, so
if they violated that order they would be held in contempt. 10:11:25
MR. NIRO: Right. If that's what your Honor is
suggesting, that they issue a subpoena from the Missouri
court, we can address it there.
THE COURT: They have to unless Revere consents to
jurisdiction in this court. 10:11:37
MR. NIRO: Right.
THE COURT: I'm going to grant that. The reason I
am going to grant it is they are not a party. They are
really under no obligation to keep the molds and store the
molds at their expense, and I think examination of the molds 10:11:48
is appropriate.
If they were a party then I would feel differently
at this point. But since they're not, you really need to
preserve evidence. And since I don't have jurisdiction over
them, the only way to do it is to allow you to apply for a 10:12:03
Rule 45 and Rule 34 subpoena.
MR. NIRO: Your Honor, just to clarify, what the
court is granting is that plaintiff can issue a Rule 45
subpoena; is that correct?
THE COURT: Right. 10:12:21